UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ZURCALED INTERNATIONAL, INC.,

                            Plaintiff,

               -against-

SCIENTIFIC GAMES CORPORATION, SCIENTIFIC
GAMES INTERNATIONAL, INC. and SCIENTIFIC
GAMES CORPORATION INTERNATIONAL, INC.,

                            Defendant.
------------------------------------------------------------x

**COMPLAINT**

07 CV. 4066

ECF CASE

JURY TRIAL
DEMANDED

JUDGE SAND

FILED
MAY 2 4 2007
USDC WP SDNY

Zurcaled International, Inc. ("Zurcaled"), by its attorneys, Bartels & Feureisen, L.L.P., as and for its complaint against Scientific Games Corporation ("SGC"), Scientific Games International, Inc. ("SGI") and Scientific Games Corporation International, Inc. ("SGCI"), (individually and collectively referred to below as "Scientific Games"), alleges as follows:

### The Parties

1.     At all times herein relevant, Zurcaled was, and still is, a corporation organized and existing pursuant to the laws of the State of New Jersey, maintaining its principal place of business in Miami Beach, Florida.

2.     At all times herein relevant, SGC was, and still is, a corporation organized and existing pursuant to the laws of the State of Delaware, maintaining its principal place of business in the City and State of New York.

3.     At all times herein relevant, SGI was, and still is, a corporation organized and existing pursuant to the laws of the State of Delaware, maintaining its principal place of business in the City and State of New York.

4. At all times herein relevant, SGCI was, and still is, a corporation organized and existing pursuant to the laws of the State of Delaware, maintaining its principal place of business in the City and State of New York.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

6. Upon information and belief, at all times relevant herein, SGC was authorized to do business in, was doing business in, and maintained an office for service of process located in, the State of New York.

7. Upon information and belief, at all times relevant herein, SGI was authorized to do business in, was doing business in, and maintained an office for service of process located in, the State of New York.

8. Upon information and belief, at all times relevant herein, SGCI was authorized to do business in, was doing business in, and maintained an office for service of process located in, the State of New York.

9. The venue of this action is properly placed in this district pursuant to 28 U.S.C. § 1391(a) because defendants are subject to personal jurisdiction in this district.

## The Facts

10. On or about December 10, 2003, Zurcaled and Scientific Games entered into a contract ("the Consulting Agreement"), which provided that Zurcaled would provide

consulting services to Scientific Games, "concerning [Scientific Games's] responding to a Request for Proposal for an online lottery/electronic public gaming network issued by the Commonwealth of Puerto Rico, Department of Treasury – Loteria Electronica ("Puerto Rico Lottery")."

11.     Annexed hereto as Exhibit "A" is a true and complete copy of the Consulting Agreement.

12.     Pursuant to paragraph 4B of the Consulting Agreement, Scientific Games is obligated to pay Zurcaled, "3.5% of all remuneration actually received by [Scientific Games] without deduction, by reason of all sales of online games (now known, or hereinafter developed) sold through the Puerto Rico Lottery network (excluding any remuneration received by [Scientific Games] from the production, distribution, sale, administration, validation and processing of instant tickets)."

13.     Pursuant to paragraph 4C of the Consulting Agreement, Scientific Games is obligated, "to pay [Zurcaled] for as long as [Scientific Games], or an affiliate of, or successor to [Scientific Games], continues to derive revenues from the Puerto Rico Lottery or any successor thereto, whether public or private."

14.     Pursuant to paragraph 4D of the Consulting Agreement, all compensation due to Zurcaled was, "fully earned by [Zurcaled] as of the date of the award of the Puerto Rico Lottery to [Scientific Games], notwithstanding that payment of such Compensation [was to be] payable at a later date."

15.     Pursuant to paragraph 4C of the Consulting Agreement, Scientific Games is obligated to, "provide [Zurcaled] with a statement setting forth by category, the calculation

of Compensation payable [under the Consulting Agreement] and all payments made thereon to date" ("Statements").

16. On or about September 22, 2004, Scientific Games was awarded the Puerto Rico Lottery contract.

17. Scientific Games continues to hold the Puerto Rico Lottery contract.

18. Scientific Games has received, and will continue to receive, remuneration by reason of the sale of online games sold through the Puerto Rico Lottery network.

19. Scientific Games has failed and refused to make any payments to Zurcaled as required by the Consulting Agreement.

20. Scientific Games has failed and refused to provide Zurcaled with the Statements required by paragraph 4C of the Consulting Agreement.

21. Scientific Games's breach of its obligations under the Consulting Agreement was, and continues to be, malicious, vindictive, willful, wanton and reckless.

## AS AND FOR A FIRST CAUSE OF ACTION

22. Zurcaled repeats, reiterates and realleges all of the foregoing paragraphs as if more fully set forth herein.

23. The Consulting Agreement is a valid and enforceable contract.

24. Zurcaled has complied with all of the terms of the Consulting Agreement and has performed all conditions precedent to Scientific Games' obligation to make payment pursuant to the Consulting Agreement and all conditions precedent to Scientific Games' obligation to make payment pursuant to the Consulting Agreement have occurred.

25. Scientific Games has breached the Consulting Agreement by reason of Scientific Games's failure and refusal to pay those sums owed Zurcaled under the terms of the Consulting Agreement.

26. By reason of the foregoing, Zurcaled has been damaged in an amount to be determined at the time of trial, but an amount that, under any circumstances, exceeds $75,000.00, exclusive of interest and costs.

## AS AND FOR A SECOND CAUSE OF ACTION

27. Zurcaled repeats, reiterates and realleges all of the foregoing paragraphs as if more fully set forth herein.

28. The Consulting Agreement is a valid and enforceable contract.

29. Zurcaled has complied with all of the terms of the Consulting Agreement and has performed all conditions precedent to Scientific Games' obligation to provide Statements pursuant to the Consulting Agreement and all conditions precedent to Scientific Games' obligation to provide Statements to the Consulting Agreement have occurred.

30. Zurcaled is without knowledge of the amount of remuneration received by Scientific Games and its affiliates and/or successors by reason of all sales of online games sold through the Puerto Rico Lottery network, or the amount due Zurcaled under the terms of the Consulting Agreement, and cannot obtain such knowledge or ascertain that amount without an accounting.

31. Zurcaled is entitled to an accounting of all remuneration actually received by Scientific Games and its affiliates and/or successors by reason of all sales of online games sold through the Puerto Rico Lottery network.

## AS AND FOR A THIRD CAUSE OF ACTION

32. Zurcaled repeats, reiterates and realleges all of the foregoing paragraphs as if more fully set forth herein.

33. An actual controversy exists between Zurcaled and Scientific Games regarding Scientific Games's continuing obligation to make payment to Zurcaled under the terms of the Consulting Agreement.

34. Zurcaled is entitled to a judgment declaring and adjudging that, from and after the last date for which damages are assessed against Scientific Games on the first cause of action, Scientific Games is obligated to pay Zurcaled 3.5% of all remuneration actually received by Scientific Games and its affiliates and/or successors by reason of all sales of online games sold through the Puerto Rico Lottery network, and for as long as Scientific Games, or an affiliate of, or successor to, Scientific Games, continues to derive revenues from the Puerto Rico Lottery or any successor thereto, whether public or private.

35. Zurcaled lacks an adequate remedy at law.

WHEREFORE, Zurcaled demands judgment against Scientific Games, as follows:

(1) On the first cause of action, for compensatory damages for breach of contract in the amount of 3.5% of all remuneration actually received by Scientific Games and its affiliates and/or successors by reason of all sales of online games sold through the Puerto Rico Lottery network from the date of the awarding of the Puerto Rico Lottery contract to Scientific Games through the date of judgment;

(2) On the second cause of action, directing Scientific Games to provide Zurcaled with an accounting of all remuneration actually received by Scientific Games and its affiliates and/or successors by reason of all sales of online games sold through the Puerto Rico Lottery network from the date of the awarding of the Puerto Rico Lottery contract to Scientific Games through the date of judgment;

(3) On the third cause of action, for an Order declaring and adjudging that, from and after the last date for which damages are assessed against Scientific Games on the first cause of action, Scientific Games is obligated to pay Zurcaled 3.5% of all remuneration actually received by Scientific Games and its affiliates and/or successors by reason of all sales of online games sold through the Puerto Rico Lottery network since the awarding of the Puerto Rico Lottery contract to Scientific Games, and for as long as Scientific Games, or an affiliate of, or successor to, Scientific Games, continues to derive revenues from the Puerto Rico Lottery, or any successor thereto, whether public or private;

(4) For punitive damages in the amount of $5,000,000.00; and

(5) For such other, further and different relief as this Court deems just and proper, including interest, costs, disbursements and attorneys' fees.

Dated: New York, New York
       May 10, 2007

                            BARTELS & FEUREISEN, L.L.P.

                    By:     _____
                            David Feureisen (DF 0774)

                            Attorneys for Plaintiff
                            925 Westchester Avenue, Suite 304
                            White Plains, New York 10604
                            (914) 681-7175

**EXHIBIT A**

# CONSULTING AGREEMENT

AGREEMENT dated December 10th, 2003 by and between Scientific Games Corporation International, Inc. ("Company"), having an office at 750 Lexington Avenue, 25th Floor, New York, New York, 10022, and Zurcaled International, Inc. ("Consultant"), having an office at 5025 Collins Avenue, Miami Beach, FL. 33140.

In consideration of the mutual covenants contained herein, the parties agree as follows:

1. Upon the terms and conditions hereinafter set forth, Consultant, as an independent contractor, shall perform, on a part-time basis, consulting services ("Services") concerning Company's responding to a Request For Proposal ("RFP") for an online lottery/electronic public gaming network issued by the Commonwealth of Puerto Rico, Department of Treasury -- Loteria Electronica ("Puerto Rico Lottery"). Consultant shall provide Services commencing on the date hereof and terminating on award of the RFP or cessation of the Company's bidding for the Puerto Rico Lottery ("Exclusive Period") for any reason.

2. The precise Services of Consultant may be designated or assigned from time to time at the direction of the President or other officer of Company, and all of the Services to be rendered hereunder by Consultant shall at all times be subject to the direction and supervision of such persons. Consultant's Services will be exclusive, so that Consultant will not be free to render similar services in Puerto Rico, to other persons or entities during the Exclusive Period and any period for which Consultant is receiving "Compensation". During the Exclusive Period and thereafter, Consultant will not publish, disseminate or inappropriately use Confidential Information (defined herein) of, or concerning, Company learned while performing Services for Company. Unless consented to by Company, the Services will be performed by Ernesto J. De La Cruz.

3. Consultant shall use its commercially reasonable efforts, skills, and abilities in the performance of the Services hereunder and to promote the interests of Company.

4. Consultant shall be paid as follows:

A. No payment shall be made unless and until Company is chosen as the winning bidder for the Puerto Rico Lottery.

B. Company shall only pay Consultant 3.5% of all remuneration actually received by Company ("Compensation"), without deduction, by reason of all sales of online games (now known, or hereinafter developed) sold through the Puerto Rico Lottery network (excluding any remuneration received by Company from the production, distribution, sale, administration, validation and processing of instant tickets).

1

C.  Payment to Consultant of Compensation shall be made by Company on the 10th day of each month ("Monthly Compensation Payment"). The Monthly Compensation Payment shall include all Compensation due and owing Consultant from payments received by Company in the previous month. With each Monthly Compensation Payment, Company shall provide Consultant with a statement setting forth by category, the calculation of Compensation payable hereunder and all payments made thereon to date. Company shall continue to pay Consultant Compensation for as long as Company, or an affiliate of, or successor to Company, continues to derive revenues from the Puerto Rico Lottery or any successor thereto, whether public or private. Without limiting the foregoing, Company shall pay Consultant Compensation from revenues derived by Company from the contract resulting from the award of the RFP and any extensions, renewals or modifications thereof.

D.  All Compensation to be paid to Consultant hereunder shall be fully earned by Consultant as of the date of the award of the Puerto Rico Lottery to Company, notwithstanding that payment of such Compensation shall be payable at a later date. No subsequent breach of the Agreement by Consultant, expiration or termination of the Agreement (except only as provided in Section 16) or, death of Ernesto J. De La Cruz, shall effect Consultant's right to the payment of Compensation.

E.  All Compensation shall be paid to Consultant in the same form of currency as received by Company for the online lottery/electronic public gaming services provided in Puerto Rico.

5.  Consultant shall be responsible for all expenses in connection with the performance of the Services.

6.  Consultant will keep Company informed of developments related to the RFP in Puerto Rico including, the lottery and gaming industries in Puerto Rico, the legal and/or administrative matters affecting Company's business interests and any other relevant information.

7.  (a)  Consultant will not, either directly or indirectly, use for his own benefit or for the benefit of any of its officers, directors, employees, agents or shareholders ("Third Parties") disclose or make known to any person or company, any Confidential Information (defined below) which becomes known to/by Consultant or Third Parties in connection with work performed hereunder. All such Confidential Information shall be the sole and exclusive property of Company. This section shall survive termination of this Agreement.

(b)  As used herein, the term "Confidential Information" means and includes, but is not limited to, any confidential or proprietary information, trade secrets, know-how, data, inventions, discoveries, processes, drawings, notes, instructions, business dealings or plans or the like of Company or any affiliate of Company or any of its customers or vendors clearly marked as such, provided such material is not already in the public domain.

2

8.  Consultant is not granted any right or authority to assume or create any obligation or liability, express or implied, on Company's behalf, or to bind Company in any manner or thing whatsoever.

9.  The Agreement of Consultant to render Services hereunder shall not be assignable or transferable by Consultant provided, however, Consultant may assign or transfer its entitlement to Compensation, subject to Section 15. .

10.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and/or assigns. In the event of the death of Ernesto J. De La Cruz this Agreement shall be binding upon and shall inure to the benefit of his heirs. With respect to Company, this Agreement shall also be binding upon any entity who acquires by asset, stock purchase or otherwise, the rights and interests, tangible or intangible, to the revenue derived from the Puerto Rico Lottery or such other online lottery system in Puerto Rico. Notwithstanding any such assignment, sale or transfer, Company shall remain liable to Consultant for the payment of Compensation as provided in this Agreement.

11.  Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and sent by certified or registered mail, return receipt requested, or its international equivalent, to the addresses stated above.

12.  The parties hereto will not disclose the existence of this Agreement, nor its substance, nor any of its terms or conditions, to any person or entity, either generally or specifically, and will not publicize or use the Agreement or the fact that it was made for any purpose whatsoever, except as necessary to advise their respective agents and representatives and to conduct business in the regular and ordinary course or in connection with disclosures to regulators, financial institutions and potential investors or as reasonably required in the conduct of business.

13.  This Agreement shall be construed in accordance with the internal laws of New York.

14.  This instrument contains the entire Agreement between the parties. It may not be changed, modified, extended or renewed except by an agreement in writing executed by Company and Consultant.

15.  All rights and restrictions contained in this Agreement may be exercised and shall be applicable and binding only to the extent that they do not violate any applicable laws and are intended to be limited to the extent necessary so that they will not render this Agreement illegal, invalid, or unenforceable. If any term of this Agreement shall be held to be illegal, invalid, or unenforceable by a court of competent jurisdiction, the remaining terms shall remain in full force and effect.

3

16.   i.   Consultant specifically acknowledges that Company is subject to the gaming and licensing requirements of various jurisdictions and is obliged to take reasonable efforts to determine the suitability of its business associates. Consultant agrees to cooperate fully with Company in providing it with any information, of whatever nature, that Company deems necessary or appropriate in assuring itself that Consultant possesses the good character, honesty, integrity, and reputation applicable to those engaged in the gaming industry ("Consultant Conduct") and specifically represents that there is nothing in Consultant's background, history, or reputation that would be deemed unsuitable under the standards applicable to the gaming industry. If, during the term of the contract, Company is notified by any regulatory agency that the conduct of business with Consultant will jeopardize Company's license or ability to be licensed because of improper Consultant Conduct,, this contract to provide Services shall terminate upon written notice by Company if a cure is not effected within sixty days of notice. Upon such termination and subject to Section 16. iii, Consultant shall not receive any further payments.

   ii.   It shall be a breach of this Agreement if any gratuities shall be offered or given by the Consultant for the purposes of unlawfully influencing (a) a foreign government official or political party official or a candidate for foreign political office to assist Company in obtaining or retaining business in violation of the United States Foreign Corrupt Practices Act of 1977, or (b) any other person, under the laws of any relevant jurisdiction (collectively, "FCP Breach"). In addition to any other remedies which Company may have against the Consultant for such a breach, Company may terminate this Agreement forthwith and Consultant shall, subject to Section 16. iii, not receive any further payments.

   iii.   In the event of termination of this Agreement by Company in accordance with the provisions of Section 16., Consultant may challenge such termination in a court of competent jurisdiction in the United States or Commonwealth of Puerto Rico ("Action"). If a final determination is rendered in the Action, that Consultant Conduct was proper or, not such as to warrant termination under Section 16.1 or, that there was not a FCP Breach by Consultant (Section 16. ii), then Consultant shall be awarded, and Company shall pay damages to Consultant, as follows: (i) All amounts payable, and to be paid Consultant pursuant to this Agreement and (ii) reasonable attorney's fees and expenses incurred by Consultant in the prosecution of the Action.

   iv.   If Consultant commences the Action within sixty (60) days of the date of his notification of the termination of this Agreement under this Section 16 then in such event, Company shall escrow with its counsel in the Action in an interest bearing escrow account, all Compensation otherwise payable to Consultant, but for said termination ("Escrow Fund"). The Escrow Fund shall be maintained until a final determination is rendered in the Action and shall be paid to Consultant if the termination is deemed improper.

4

      v.    In the event Consultant's conduct under this Agreement becomes the subject of any investigation, regulatory proceeding or court action, Company shall provide Consultant with notice of same (simultaneous with Company's notice) and Consultant shall be provided an opportunity to appear and be heard.

IN WITNESS WHEREOF, this Agreement has been duly executed this 10th day of May but as of the day and year first above written.

SCIENTIFIC GAMES INTERNATIONAL, INC.

By: _____
Name:
Title:

ZURCALED INTERNATIONAL, INC.

By: _____
Name:
Title:

5