UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

ZURCALED INTERNATIONAL, INC.,

               Plaintiff,

      -against-

SCIENTIFIC GAMES CORPORATION,
SCIENTIFIC GAMES INTERNATIONAL,
INC. and SCIENTIFIC GAMES
CORPORATION INTERNATIONAL, INC.,

            Defendants.

---------------------------------------------------------- X

Case No. 07 Civ. 4066 (LBS)

**SCIENTIFIC GAMES CORPORATION AND SCIENTIFIC
GAMES INTERNATIONAL, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

THELEN REID BROWN
RAYSMAN & STEINER LLP
875 Third Avenue
New York, New York 10022
Telephone No. (212) 603-2000
Facisimile No. (212) 603-2001

# TABLE OF CONTENTS

Page

Table of Contents .................................................................................................................. i

Table of Authorities .............................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 3

ARGUMENT ......................................................................................................................... 7

    POINT I.   Zurcaled Can Establish No Right to Receive Payment Under the
             Consulting Agreement ..................................................................................... 8

        A.    The Contract Required Zurcaled to Cooperate With
               SGI's Review of Allegations Suggesting Zurcaled's
               Involvement With Possible Corruption. .................................................... 10

        B.    The Requirement that Zurcaled Cooperate With SGI's
               Internal Review of Conduct Was a Material Term
               of the Consulting Agreement ...................................................................... 11

        C.    Zurcaled Breached its Obligation to Fully Cooperate with
               SGI's Internal Review of Alleged Improprieties Concerning
               The Award of the Lottery Contract to SGI ................................................ 13

    POINT II.   Scientific Games and Scientific Games Corporation
              International, Inc. are not Parties to the Agreement
               and Should Be Dismissed ............................................................................. 17

    CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

## CASES

*232 Broadway Corp. v. New York Property*
*Insurance Underwriting Associate,*
  206 A.D.2d 419, 615 N.Y.S.2d 42 (2d Dep't 1994)......................................................14

*Antolotti v. Verderame,*
  175 A.D.2d 822, 573 N.Y.S.2d 194 (2d Dep't 1991)...................................................17

*Baxter v. Palmigiano,*
  425 U.S. 308, 96 S. Ct. 1551 (1976).........................................................................16

*CDR Creances S.A. v. Euro-American Lodging Corp.,*
  2007 WL 1470494 (1st Dep't 2007) ...........................................................................17

*Cortec Industries, Inc. v. Sun Holding L.P.,*
  949 F.2d 42 (2d Cir. 1999).........................................................................................3

*Dunkin' Donuts Inc. v. Barr Donut, LLC,*
  242 F. Supp. 2d 296 (S.D.N.Y. 2003)........................................................................16

*Fitzgibbons Boiler Co. v. National City Bank of New York,*
  287 N.Y. 326, 39 N.E.2d 897 (1942)...........................................................................8

*Global Minerals and Metals Corp. v. Holme,*
  35 A.D.3d 93, 824 N.Y.S.2d 210 (1st Dep't 2006).....................................................13

*Hadden v. Consolidated Edison Co. of New York, Inc.,*
  45 N.Y.2d 466, 382 N.E.2d 1136 (1978)...............................................................14, 15

*Hayden v. County of Nassau,*
  180 F.3d 42 (2d Cir. 1999).........................................................................................3

*In the Matter of GE InVision, Inc.,*
  Admin. Proc. File, 2/14/05, Order Instituting
  Cease-and-Desist Proceedings, No. 3-11827 (SEC 2004)............................................2

*Jafari v. Wally Findlay Galleries,*
  741 F. Supp. 64 (S.D.N.Y. 1990) ................................................................................8

*Johnson v. Allstate Insurance Co.,*
  197 A.D.2d 672, 602 N.Y.S.2d 876 (2d Dep't 1993)..................................................14

*Mangiafico v. Blumenthal,*
  471 F.3d 391 (2d Cir. 2006).......................................................................................3

*Marcello v. Long Island R.R.,*
  465 F. Supp. 54 (S.D.N.Y. 1979) ..............................................................................14

*McConnell v. Commonwealth Pictures Corp,*
  7 N.Y.2d 465, 199 N.Y.S.2d 483 (1960) ....................................................8

*O'Dell v. TransWorld Entertainment Corp.,*
  153 F. Supp. 2d 378 (S.D.N.Y. 2001) *aff'd,*
  40 Fed. Appx. 628 (2d Cir. 2002) ..............................................................14

*Pevensey Press, Ltd. v. Prentice-Hall, Inc.,*
  161 A.D.2d 500, 555 N.Y.S.2d 769 (1st Dept. 1990)..................................17

*R.A.C. Group, Inc. v. Board of Education of City of New York,*
  21 A.D.3d 243, 799 N.Y.S.2d 559 (2d Dep't 2005)......................................8

*Reuben H. Donnelley Corp. v. Mark I Marketing Corp.,*
  893 F. Supp. 285 (S.D.N.Y. 1995) ............................................................14

*Rexford Holdings, Inc. v. Sideman,*
  21 F.3d 522 (2d Cir. 1994)..........................................................................7

*Rosenblatt v. Christie, Manson & Woods Ltd.,*
  2005 WL. 2649027 (S.D.N.Y. Oct. 14, 2005) ..............................................7

*S.E.C. v. Scott,*
  565 F. Supp. 1513 (S.D.N.Y. 1983), *aff'd sub nom,*
  *SEC v. Cayman Islands Reinsurance Corp.,*
  734 F.2d 118 (2d Cir. 1984)........................................................................16

*Shaw v. Bronfman,*
  284 A.D.2d 267 (1st Dep't 2001) .........................................................13, 14

*Special Situations Fund III, L.P. v. Versus Technology,*
  227 A.D.2d 321, 642 N.Y.S.2d 894 (1st Dep't 1996)....................................8

*In re Syncor Intern. Corp. Securities Litigation,*
  327 F. Supp. 2d 1149 (C.D. Cal. 2004) ......................................................12

*U.S. v. Jacobs,*
  117 F.3d 82 (2d Cir. 1997)..........................................................................12

*U.S. v. Metcalf & Eddy, Inc.,*
  Civil Action No. 99CV12566 (NG) (D.Ma. Dec. 14, 1999) ......................16

*U.S. v. International Broth. of Teamsters,*
  981 F.2d 1362 (2d Cir. 1992)......................................................................13

*Walters v. Fullwood,*
  675 F. Supp. 155 (S.D.N.Y. 1987) ..............................................................9

*Yarde v. Good Samaritan Hospital,*
    360 F. Supp. 2d 552 (S.D.N.Y. 2005).........................................................................15

## STATUTES and RULES

Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-1 (Westlaw 2007).................2, 4, 10, 11

Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7201 (Westlaw 2007) ...................................2, 4

18 U.S.C. §1346 (Westlaw 2007) .......................................................................................11

18 U.S.C. §1951 (Westlaw 2007) .......................................................................................11

33 L.P.R.A. § 4363 (Westlaw 2007).............................................................................10, 11

Fed. R. Civ. P. 12(b)(6) (Westlaw 2007) ....................................................................1, 3, 7

## MISCELLANEOUS

Commission Statement on the Relationship of Cooperation to Agency
    Enforcement Decisions (October 23, 2001).....................................................................5

Department of Justice Opinion Procedure Release,
    No. 04-02 (July 12, 2004) ...................................................................................2, 4, 11

Federal Prosecution of Corporations, Memorandum from Deputy Attorney
    General Eric Holder to the United States Attorneys' Offices (June 16, 1999)..........4, 5

Federal Prosecution of Business Organizations, Memorandum from Deputy
    Attorney General Larry D. Thompson to the United States Attorneys' Offices
    (January 20, 2003) ...................................................................................................4, 5

Memorandum from Deputy Attorney General Paul J. McNulty to the United
    States Attorneys' Offices (Dec. 12, 2006) .................................................................4, 5

*Seaboard*, Report of Investigation Pursuant to Section 21(a) of the Securities
    Exchange Act of 1934...............................................................................................4, 5

Defendants Scientific Games Corporation ("SGC" or "Scientific Games") and Scientific Games International, Inc. ("SGI" or the "Company"), by their attorneys, Thelen Reid Brown Raysman & Steiner LLP, submit this memorandum in support of their motion to dismiss the action commenced by Zurcaled International, Inc. ("Zurcaled") pursuant to Fed. R. Civ. P. Rule 12(b)(6).

## PRELIMINARY STATEMENT

The instant case should be dismissed with prejudice against all three named defendants. Scientific Games is not a party to the contract with Zurcaled (the "Consulting Agreement," attached as Exhibit A to the complaint) and Scientific Games Corporation International, Inc. does not exist.[1]

The only parties to the Consulting Agreement are Zurcaled and SGI. Zurcaled has no viable claim against SGI. The contract on which Zurcaled sues was properly terminated by SGI as a result of Zurcaled's breach when it refused to provide SGI with information it deemed necessary in connection with its review of allegations, first raised in the press, suggesting that Zurcaled may have performed its contractual obligations in a corrupt or illegal manner. Upon Zurcaled's refusal, among other matters, to identify the persons with whom it was in contact, as conclusively evidenced by the correspondence of Zurcaled's counsel, SGI properly terminated the Consulting Agreement pursuant to Section 16.

Given Zurcaled's refusal to cooperate with SGI's investigation, SGI could not lawfully provide further economic benefits to Zurcaled under the Consulting Agreement without placing SGI itself in potential jeopardy of civil and criminal sanctions. Independently of the contractual

---

[1] The name "Scientific Games Corporation International, Inc." appears in the contract attached to the complaint but is a typographical error as no such company exists and the contract is signed by SGI.

breach, Zurcaled's refusal to cooperate in SGI's review of Zurcaled's own conduct rendered the contract void as a matter of public policy.

Publicly owned companies (like SGC) and their operating subsidiaries (like SGI) are held to rigorous standards of conduct and agent oversight. *See, e.g.,* Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-1 *et seq.* ("FCPA"); Sarbanes-Oxley Act of 2002, Public Law 107-204, 15 U.S.C. § 7201 *et seq.* ("SOX"); NASDAQ Rules on Governance.  Furthermore, regulated businesses such as SGI and its parent Scientific Games are held to the highest ethical and governance standards.  In order to keep itself above reproach, the SGI Consulting Agreement forbids misconduct (including corrupt acts) by its agent, Zurcaled, and requires the consultant's express cooperation if allegations of wrongdoing are raised.  These provisions help to ensure adherence to appropriate corporate governance and oversight principles and to avoid governmental sanctions through derivative liability for the misconduct of agents or for the negligent oversight of such agents. *See, e.g.,* DOJ Op 04-02; *In the Matter of GE InVision, Inc.*, Admin. Proc. File, 2/14/05, Order Instituting Cease-and-Desist Proceedings, No. 3-11827 (SEC 2004) (principal liable where it was aware of high probability that its agents paid or offered to pay value to obtain business and, notwithstanding such knowledge, authorized payments to agents) ("*InVision*").

After SGI became aware of allegations of potential misconduct involving Zurcaled, it responsibly requested Zurcaled's cooperation.  When Zurcaled refused to cooperate, it both violated the contract and prevented SGI from having any further involvement with it.  Thus, Zurcaled, by its own actions, breached the Consulting Agreement, rendering it void, and prevented SGI from having any further involvement with Zurcaled, including by paying it for potentially improper activity.

Zurcaled, in agreeing to the provisions of Section 16 of the Consulting Agreement, bound itself to the same high standards of conduct and transparency that govern SGI. In refusing its cooperation in a legitimate investigation of its own conduct, Zurcaled repudiated its adherence to such standards and forfeited, as a matter of public policy, as well as contract law, any right to benefits that it might otherwise have received.

Because all of Zurcaled's claims are mistakenly premised on SGI's alleged breach of contract, the complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

This motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6) is based upon the allegations of the complaint, the Consulting Agreement attached to the complaint as Exhibit A and three letters from Zurcaled's counsel, dated March 10, 2005, March 21, 2005 and April 12, 2005, attached to the affidavit of Larry A. Potts as Exhibits B, C and D (the "Potts Aff."). The three letters, which this Court may consider on this motion to dismiss the complaint,[2] conclusively evidence Zurcaled's failure to perform under the Consulting Agreement, notwithstanding Zurcaled's allegation, at paragraph 24 of the complaint, that it "complied with all of the terms of the Consulting Agreement."

---

[2] The correspondence establishes through the words of Zurcaled's own lawyer its refusal to cooperate with a legitimate investigation of Zurcaled's conduct, in breach of Section 16 of the Consulting Agreement. Because Zurcaled had "actual knowledge" of its counsel's documents and necessarily relied upon them in framing its complaint, the Court may properly consider these documents and treat this motion as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Mangiafico v. Blumenthal,* 471 F.3d 391 (2d Cir. 2006); *Cortec Industries, Inc. v. Sun Holding L.P.,* 949 F.2d 42 (2d Cir. 1999) (reliance on documents of which plaintiff had "actual notice" not requiring conversion of motion to one under Rule 56). The remainder of the Potts Aff. and the other documents attached to it are provided solely to give the Court context for the three letters of Zurcaled's counsel and are not relied upon as necessary to an understanding of Zurcaled's refusal to cooperate. *Hayden v. County of Nassau,* 180 F.3d 42 (2d Cir. 1999) (where court refers to supplementary materials, without reliance as basis for decision, dismissal motion need not be converted into summary judgment motion).

SGI is a provider of on-line lottery systems and other gaming services and products. SGI's business is highly regulated and requires government licenses in many jurisdictions, including Puerto Rico. Potts Aff. ¶ 6.

Both the various regulatory regimes governing the lottery and gaming industries as well as governance and anti-corruption statutes require SGI to scrupulously monitor the activities of its consultants to ensure compliance with applicable law and to investigate allegations of impropriety. *See*, FCPA, SOX, NASDAQ Governance Rules, *supra*, at 2.

For instance, since 1977, the FCPA has required that public companies (like SGC) and their subsidiaries (like SGI) have internal accounting controls, which provide reasonable assurance that all transactions are authorized; all transactions are recorded to allow reporting and accounting; assets can only be accessed with authorization from management; and recorded and actual assets can be compared.    Since the FCPA, the federal Sentencing Commission has adopted Guidelines on the Sentencing of Organizations that outline various compliance requirements, including appropriate monitoring of employees and agents, and Congress adopted the Sarbanes-Oxley Act of 2002 with its enhanced controls provisions.  The Justice Department has also promulgated specific guidance on due diligence in contracting with and monitoring consultants as part of the statutory FCPA opinion process.  DOJ Op. 04-02.  NASDAQ, the public market that sets the listing standards for SGC, has adopted similar governance guidance that is applicable to both SGC and its subsidiary SGI.  The SEC, in *Seaboard*[3] and the Justice Department in the Holder, Thompson and McNulty Memoranda[4] have both interpreted this

---

[3] Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934 and Commission Statement on the Relationship of Cooperation to Agency Enforcement Decisions (10/23/01).

[4] Memorandum from Deputy Attorney General Paul J. McNulty to the United States Attorneys' Offices (Dec. 12, 2006); *see also* Federal Prosecution of Corporations, Memorandum from

regulatory framework as requiring rigorous compliance programs (including consultant oversight) as the primary mechanism for corporations to avoid the imposition of severe civil and criminal sanctions for agent misconduct. These same guidelines and the lessons from prosecutions by federal authorities impose on SGI rigorous standards for agent oversight. Failure to oversee its agents adequately can subject SGI to severe civil and criminal sanctions, place its licenses and contracts at risk and destroy its ability to do business. *See InVision, supra*, at 3.

In December 2003 SGI entered into the Consulting Agreement with Zurcaled in connection with SGI's response to the Treasury Department of the Commonwealth of Puerto Rico's request for a proposal with respect to providing services for the Puerto Rican national electronic lottery. Complaint, ¶ 10; Consulting Agreement, ¶ 1 [Exhibit A to complaint].

As part of the Consulting Agreement, and to ensure compliance with applicable law, regulations and licensing requirements, Zurcaled was required to perform its functions in a legally compliant manner and to fully cooperate in providing SGI with any information SGI deemed necessary or appropriate to assure SGI that Zurcaled's conduct: (a) met the requirements for participants in the industry; (b) would not jeopardize SGI's licenses; and (c) did not involve the offering or giving of gratuities to influence the award of a contract by a government. Consulting Agreement, ¶ 16.

In September 2004, the Treasury Department of Puerto Rico awarded SGI the lottery contract after a competitive bidding process. Complaint, ¶ 16. Reports had surfaced in the press concerning allegations of technical bidding irregularities and improper payments made in

---

Deputy Attorney General Eric Holder to the United States Attorneys' Offices (June 16, 1999); Federal Prosecution of Business Organizations, Memorandum from Deputy Attorney General Larry D. Thompson to the United States Attorneys' Offices (January 20, 2003).

connection with the procurement of the lottery contract. *E.g.,* Potts Aff., Ex. E. In addition, the House of Representatives and Senate of the Commonwealth of Puerto Rico adopted resolutions to compel an official investigation with respect to the process and award of the new lottery contract. *Id.,* Exs. F, G and H.

In response to these allegations, and to satisfy its duty of oversight of its employees and agents to determine whether the lottery contract was procured in a manner that complied with the requirements of applicable statutory, regulatory and licensing requirements, Scientific Games, on behalf of SGI, initiated a review. *Id.,* ¶ 14.

In the course of that review, SGI requested that Ernesto de la Cruz ("de la Cruz"), Zurcaled's principal, make himself available for an interview under oath and on a transcribed record. Potts Aff., Ex. I.

On March 10, 2005, March 21, 2005, and April 12, 2005, Zurcaled, through its counsel, refused in writing "to cooperate fully with the Company in providing it with any information of whatever nature that the Company deems necessary or appropriate in assuring itself of" Zurcaled's conduct, as required by Section 16 of the Consulting Agreement. In particular, Zurcaled refused to identify those people it contacted in Puerto Rico or to disclose the substance of its communications with them, claiming that its contacts were trade secrets. Potts Aff., Exs. B, C and D. Zurcaled, and its counsel, declined to appear at any interview at which the Company would seek to make such inquiries. Potts Aff., Exs. C, D.

On April 6, 2005 SGI gave Zurcaled notice of breach of the Consulting Agreement pursuant to Section 16.i for failure to cooperate with SGI's review. Potts Aff., Ex. J. Zurcaled refused to cure its breach and elected to treat the April 6th letter as a notice of termination. Potts Aff., Ex. D.

More than two years later, on May 24, 2007, Zurcaled filed its complaint, purporting to assert three claims based entirely on SGI's alleged breach of the Consulting Agreement. By this motion, SGI and Scientific Games seek dismissal of the complaint, with prejudice, as against all the named defendants.

## ARGUMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. As is evident from the express terms of the Consulting Agreement, annexed as Exhibit A to the complaint, and Zurcaled's indisputable refusal to provide information SGI deemed necessary or appropriate in connection with its review of Zurcaled's conduct, Zurcaled breached the Consulting Agreement and, therefore, forfeited its rights to benefits under it. Zurcaled cannot state a claim upon which relief can be granted.

In addition, Zurcaled has no cognizable claim against Scientific Games, which is not a party to the Consulting Agreement, or Scientific Games Corporation International, Inc., which does not exist.

## I.    Zurcaled Can Establish No Right to Receive Payment Under the Consulting Agreement

The elements of a claim for a breach of contract are: (1) the existence of a contract; (2) its performance; (3) a breach; and (4) damages. *E.g., Rexford Holdings, Inc. v. Sideman*, 21 F.3d 522, 525 (2d Cir. 1994); *Rosenblatt v. Christie, Manson & Woods Ltd.*, 2005 WL 2649027 (S.D.N.Y. Oct. 14, 2005).[5] Zurcaled purports to assert three "causes of action," each premised on SGI's alleged breach of contract. The first claim for relief seeks damages for a claimed

---

[5] Section 13 of the Consulting Agreement provides that it is governed by New York law, and all the cited cases apply New York law.

breach of the Consulting Agreement, the second an accounting to determine its damages as a result of the alleged breach and the third a declaration that the alleged breach entitles it to be paid in the future. Thus, if there is no breach, all the claims fail.

Zurcaled's claims fail because its prior material breach discharges SGI's performance. *Jafari v. Wally Findlay Galleries*, 741 F.Supp. 64, 68 (S.D.N.Y. 1990). *See Special Situations Fund III, L.P. v. Versus Technology*, 227 A.D.2d 321, 642 N.Y.S.2d 894 (1st Dep't 1996) ("[a] party will be relieved or discharged from the performance of futile acts or conditions precedent, including the tender of payment, upon the failure or refusal by a party to honor its obligations under their contract") (citations omitted). As New York's highest court has stated, "Plaintiff, of course, may not insist on the fulfillment of a contract to which it is a party if it can be said to have brought about the breach of that contract." *Fitzgibbons Boiler Co. v. National City Bank of New York*, 287 N.Y. 326, 331, 39 N.E.2d 897, 899 (1942).

Moreover, under New York law, a party that has engaged in corruption in connection with the performance of a contract that is otherwise valid on its face will be denied access to New York courts. *McConnell v. Commonwealth Pictures Corp*, 7 N.Y.2d 465, 199 N.Y.S.2d 483 (1960); *see, also, R.A.C. Group, Inc. v. Board of Educ. of City of New York*, 21 A.D.3d 243, 799 N.Y.S.2d 559 (2d Dep't 2005) (holding "it is against public policy to permit the plaintiffs to enforce the subject contract and to profit from their wrongdoing"). In *McConnell*, the New York Court of Appeals held that a defendant alleged a viable affirmative defense to plaintiff's breach of contract claim based on a failure to pay for motion picture rights, where the defendant alleged that plaintiff procured the rights through bribery of seller's agent. *McConnell*, 7 N.Y.2d at 469, 199 N.Y.S.2d at 489 (citing the "prime and long-settled public policy [that] closes the doors of our courts to those who sue to collect the rewards of corruption").

8

Judge Brieant's analysis in *Walters v. Fullwood*, 675 F. Supp. 155 (S.D.N.Y. 1987), is instructive.   In *Walters,* plaintiff, a sports agent, brought suit against a professional football player, for a breach of contract, after the athlete fired plaintiff and hired a new agent.   The contract that plaintiff sought to enforce was dated on the first day on which the player could sign a contract without forfeiting his amateur status under NCAA rules.   A loan agreement by which the agent had loaned the player money was on its face executed months before.   The NCAA rule was intended to deter widespread misconduct by players' agents, who used gifts and loans to induce players to sign with them before they were eligible.   Neither the plaintiff nor the defendant admitted the postdating of the agreement and both had conspicuously avoided identifying the actual date on which the agreement was signed.   The court found the parties' silence supported "a powerful inference" that the agreement was, in fact, postdated.   The court granted the defendant's Rule 12(b)(6) motion to dismiss the contract claim, predicated upon New York State public policy that sought to protect the  integrity of the status of amateur athletes, relying on  New York case law denying enforcement of agreements as against public policy, "even in the absence of a direct violation of a criminal statute, if the sovereign has expressed a concern for the values underlying the policy implicated" or where enforcement of performance of the contract "would provoke conduct established as wrongful by independent commitments undertaken by either party." *Id.,* 675 F. Supp. at 161, 162.

The same public policy that voids contracts for actual corruption renders such contracts void when the party involved in potential corruption shrouds his activity in a refusal to cooperate as required by the contract that party seeks to enforce.   Indeed, the refusal not only breaches the contract but strongly suggests the other party should avoid all further contact in order to avoid negative implications under the unambiguous guidance from both the SEC and the Justice

Department.  Here, SGI properly terminated the Consulting Agreement after Zurcaled failed to

fully cooperate with SGI's review of allegations of wrongdoing arising out of Zurcaled's conduct

in connection with the award of the lottery contract.  When Zurcaled refused to disclose the

identities of those with whom it met as part of its activities, it both breached Section 16 of the

Consulting Agreement and rendered further performance by SGI improper.

### A.    The Contract Required Zurcaled to Cooperate With SGI's Review of Allegations Suggesting Zurcaled's Involvement With Possible Corruption

Section 16 of the Consulting Agreement sets forth certain circumstances and conduct that

permit SGI to terminate Zurcaled and discharge any further payment obligation of SGI.

Specifically, Paragraph 16.i provides, in part:

> Consultant [Zurcaled] specifically acknowledges that Company
> [SGI] is subject to the gaming and licensing requirements of
> various jurisdictions and is obliged to take reasonable efforts to
> determine the suitability of its business associates.  Consultant
> agrees to cooperate fully with Company in providing it with any
> information, of whatever nature, that Company deems necessary or
> appropriate in assuring itself that Consultant possesses the good
> character, honesty, integrity, and reputation applicable to those
> engaged in the gaming industry ("Consultant Conduct") and
> specifically represents that there is nothing in Consultant's
> background, history, or reputation that would be deemed
> unsuitable under the standards applicable to the gaming industry.

Paragraph 16.ii of the Consulting Agreement defined as a "FCP Breach" Zurcaled's offering or

giving any gratuity for the purpose of unlawfully influencing any person in obtaining or retaining

business, "under the laws of any relevant jurisdiction," including, but not limited to, violations of

the FCPA.  Commissions of a FCP Breach were grounds for "immediate termination," without

further compensation, by SGI.  Thus, violations of the Puerto Rico bribery statute, 33 L.P.R.A. §

4363 and federal law prohibiting interstate travel to violate such laws, 18 U.S.C. §1951 *et seq.*, each constitute FCP Breaches.[6]

Accordingly, under the express terms of the Consulting Agreement, Zurcaled was required to provide any information SGI deemed necessary or appropriate concerning Zurcaled's conduct, and the Consulting Agreement could be terminated, without further compensation, in the event Zurcaled failed to comply with the provisions of Section 16.

### B.    The Requirement that Zurcaled Cooperate With SGI's Internal Review of Conduct Was a Material Term of the Consulting Agreement

The duty of SGI, a regulated subsidiary of a regulated, public company, to monitor the activities of its employees and consultants can be found in the Organizational Sentencing Guidelines, the FCPA, and 18 U.S.C. §1346, among other places.    In the Department of Justice's opinion procedure release 04-02 of July 12, 2004, the Department announced it had declined to prosecute a company acquiring assets otherwise potentially tainted by violations of the FCPA.  In rendering this opinion, the Department relied upon the acquirer's undertakings, among other things, to establish compliance standards and procedures to be followed by all agents, consultants and representatives involved in business transactions or business

---

[6]    Paragraph    16.ii    of    the    Consulting    Agreement,    provides:

It shall be a breach of this Agreement if any gratuities shall be offered or given by the Consultant for the purposes of unlawfully influencing (a) a foreign government official or political party official or a candidate for foreign political office to assist Company in obtaining or retaining business in violation of the United States Foreign Corrupt Practices Act of 1977, or (b) any other person, under the laws of any relevant jurisdiction (collectively, "FCP Breach").  In addition to any other remedies which Company may have against the Consultant for such a breach, Company may terminate this Agreement forthwith and Consultant shall, subject to Section 16.iii, not receive any further payments.

development or retention in a foreign jurisdiction (DOJ Op 04-02 at ¶ 5(A)), and to provide for (*id.,* at ¶ 5(J)):

> the inclusion in all agreements, contracts, and renewals thereof with all Agents and Business Partners of provisions: (i) setting forth anti-corruption representations and undertakings; (ii) relating to compliance with foreign anti-corruption laws and other relevant laws; (iii) allowing for internal and independent audits of the books and records of the Agent or Business Partner to ensure compliance with the foregoing; and (iv) providing for termination of the Agent or Business Partner as a result of any breach of applicable anti-corruption laws and regulations or representations and undertakings related thereto.

The Consulting Agreement with Zurcaled anticipated this and complied with it and similar guidance. In order to meet the applicable standards, SGI was compelled to, and did, make appropriate inquiries of Zurcaled, but Zurcaled refused to comply. To allow Zurcaled to frustrate SGI's corporate responsibility under these guidelines, profit despite this frustration and leave SGI exposed to sanction and the potential loss of its ability to do business would violate the very public policies embodied in the guidance.

By breaching its contractual and statutory duties of cooperation, Zurcaled frustrated SGI's exercise of the controls and supervision over those purporting to act in its interest that numerous standards such as the FCPA require and that SGI and Scientific Games had in place. *See In re Syncor Intern. Corp. Securities Litigation,* 327 F. Supp. 2d 1149, 1155 (C.D. Cal. 2004) (noting that SEC found corporation in violation of the FCPA for "failing to devise or maintain an effective system of internal controls to prevent or detect violations").

Under the FCPA, for example, a corporation can incur liability where it does not fully investigate wrongdoing when it has reason to suspect misconduct. *U.S. v. Jacobs,* 117 F.3d 82 (2d Cir. 1997) (authorizing constructive avoidance instruction in FCPA criminal case).

A party cannot remain willfully blind regarding its adherence to the law; and its duty of inquiry is heightened where the party has reason to believe that something may be amiss. *Global Minerals and Metals Corp. v. Holme*, 35 A.D.3d 93, 100, 824 N.Y.S.2d 210, 215 (1st Dep't 2006). Nor can a party "reasonably rely" on disavowals of wrongdoing, without making additional inquiry to determine their accuracy; and failure to make further inquiry will result in the assumption that the party has willingly assumed the business risk that the facts may not be as represented. *Id., see also U.S. v. Int'l Broth. of Teamsters*, 981 F.2d 1362 (2d Cir. 1992) (minimal steps taken by union to assess validity of accusations insufficient to extinguish union's duty to investigate).

Zurcaled expressly acknowledged SGI's obligations to investigate in Section 16.i of the Consulting Agreement, and those duties provide the basis for Zurcaled's undertaking to fully cooperate with SGI in connection with SGI's review of issues concerning Zurcaled's conduct. Zurcaled's failure to cooperate is a material breach and voids on both contractual and public policy grounds any obligation that SGI may otherwise have had to pay Zurcaled.

**C.    Zurcaled Breached its Obligation to Fully Cooperate with SGI's Internal Review of Alleged Improprieties Concerning The Award of the Lottery Contract to SGI**

Section 16.i of the Agreement expressly requires Zurcaled "...to cooperate fully with Company in providing it with any information, of whatever nature, that Company deems necessary or appropriate ..." with respect to Zurcaled's conduct. Zurcaled's refusal to provide such cooperation, and, in particular, its refusal to identify the individuals with whom it was in contact in Puerto Rico and its attempt to limit the information it provided to SGI, constitutes a material breach of its obligations under Section 16. *See, e.g., Shaw v. Bronfman*, 284 A.D.2d 267, 268 (1st Dep't 2001) (dismissing breach of contract action where plaintiff failed to

cooperate with insurer's review as required by policy); *232 Broadway Corp. v. New York Property Ins. Underwriting Assoc.*, 206 A.D.2d 419, 615 N.Y.S.2d 42 (2d Dep't 1994) (dismissing contract action due to plaintiff's material breach where plaintiff refused to provide necessary information as required by its insurance policy).

For example, in *Johnson v. Allstate Ins. Co.*, 197 A.D.2d 672, 602 N.Y.S.2d 876 (2d Dep't 1993), the court found that a party's "refusal to answer numerous relevant questions during his examination under oath, his improper and premature termination of the examination despite repeated warnings, and his rejection of all subsequent attempts by the insurer to conduct a further examination and to obtain relevant documents" constituted a "pattern of willful non-cooperation in the investigation" and barred plaintiff's suit. *Id.* at 876-77; *see also O' Dell v. TransWorld Entertainment Corp.*, 153 F. Supp. 2d 378, 389-90 (S.D.N.Y. 2001) (employee barred from attacking insurance company's investigation where she refused to cooperate) *aff'd*, 40 Fed. Appx. 628 (2d Cir. 2002); *Marcello v. Long Island R.R.*, 465 F. Supp. 54 (S.D.N.Y. 1979) (dismissing complaint alleging, in part, wrongful termination where employee did not rebut grounds for termination due to refusal to participate in investigation of allegations of criminal activity).

Moreover, where a party shirks its duty to speak and in fact conceals its breach, the failure to provide the needed information is sufficient to constitute a material breach. *See Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*, 893 F. Supp. 285 (S.D.N.Y. 1995) (concealment of breach of contract amounts to breach of contract). Moreover, one's duty to speak is heightened by the onset of corruption allegations. *See Hadden v. Consolidated Edison Co. of New York, Inc.*, 45 N.Y.2d 466, 382 N.E.2d 1136 (1978). In *Hadden*, the New York Court of Appeals stated:

> When [the employee's] dealings with the suppliers and a political figure were called into question, his failure to disclose material facts to the employer, including his conceded statement that he had done nothing wrong, was calculated to induce a false belief and was the predicate for reliance. At this juncture, the distinction between concealment and affirmative misrepresentation faded into legal insignificance, both being fraudulent.

*Id.* at 470; *see Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552 (S.D.N.Y. 2005) (upholding employee's termination where employee refused to cooperate in management's investigation).

Zurcaled's breach of its obligation to cooperate is conclusively evidenced by its counsel's correspondence refusing to provide information SGI deemed necessary or appropriate in its review of Zurcaled's conduct. Specifically, SGI sought to learn the identities of the individuals that Mr. de la Cruz met in Puerto Rico in connection with the procurement of the lottery contract, as well as Zurcaled's other activities in connection with the Consulting Agreement. SGI asked Mr. de la Cruz to make himself available for interview, under oath. Potts Aff., Ex. I. Zurcaled, through its counsel, advised SGI that Zurcaled would not identify those people Zurcaled contacted in Puerto Rico and sought to limit its response to any particular allegation to whether the allegation was true or false. Potts Aff. Ex. B, C, D. Zurcaled refused to identify a group it entertained on a yacht, or the conversations that took place on board; it claimed that certain SGI employees had specifically acquiesced in the excursion and in Mr. de la Cruz's insistence on concealing the identities of the persons on board and the discussions that took place.[7] It refused to identify the SGI employees or to provide any documentation that evidenced their acquiescence in Zurcaled's activities. Potts Aff, Exs. C and D.   The basis for Zurcaled's position is untenable. Lavish entertainment of decision-makers in contracting has been deemed actionable by the

---

[7]    Even if true, this allegation would not have excused Zurcaled's failure to cooperate. Rather, full cooperation would have been even more important because the allegation implicated SGI's own personnel and not just the personnel of an outside consultant.

Justice Department in some circumstances. *See U.S. v. Metcalf & Eddy, Inc.*, U. S. District Court for the District of Massachusetts, Civil Action No. 99CV12566 NG, Consent and Undertaking of Metcalf & Eddy, Inc. (Dec. 14, 1999). Whether Zurcaled was involved in such entertainment was a material and appropriate subject for inquiry under the contract.

With Zurcaled's refusal to cooperate in SGI's review, SGI had no choice but to acknowledge the possibility of an adverse inference that, had Zurcaled provided the information sought, it would have revealed that Zurcaled was involved in potentially corrupt practices barred by applicable law and the Consulting Agreement. In *Dunkin' Donuts Inc. v. Barr Donut, LLC*, 242 F. Supp. 2d 296 (S.D.N.Y. 2003), for example, plaintiff claimed that the defendant breached its franchise agreement for failure to cooperate with a pending criminal investigation. The court held that the principal's invocation of his Fifth Amendment privilege when questioned with respect to whether he laundered money from drug activity permits the Court to draw an adverse inference against him. *See Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S. Ct. 1551 (1976) ("[s]ilence is often evidence of the most persuasive character" and allowing adverse inference to be drawn from prisoner's silence in a disciplinary hearing); *see also S.E.C. v. Scott*, 565 F. Supp. 1513, 1534 (S.D.N.Y. 1983) (permitting adverse inference on issue of liability in securities fraud case), *aff'd sub nom, SEC v. Cayman Islands Reinsurance Corp.,* 734 F.2d 118 (2d Cir. 1984). Had SGI paid Zurcaled under the contract notwithstanding its refusal to cooperate and its concern-provoking responses, it faced a significant risk of becoming derivatively liable for the adverse inference Zurcaled created, a result that the law does not compel. Rather, the law properly voids the contract in such circumstance.

SGI bargained for the right to obtain information from Zurcaled with respect to its conduct to meet SGI's legal duties. SGI would have placed itself at material risk of violating these duties had it paid Zurcaled notwithstanding Zurcaled's (a) refusal to disclose the identity of those individuals in Puerto Rico with whom Zurcaled had contact and (b) effort to circumscribe SGI's inquiry. Given its legal obligations and contractual rights, SGI properly terminated the Agreement and refused to remit any further payment to Zurcaled.

## II. Scientific Games and Scientific Games Corporation International, Inc. are not Parties to the Agreement and Should Be Dismissed

A contract is ineffective as against an entity that did not sign the contract. *See CDR Creances S.A. v. Euro-American Lodging Corp.*, 2007 WL 1470494 (1st Dep't 2007) (dismissing contract claim where defendant was not a party to the agreement and had not signed the contract); *Antolotti v. Verderame*, 175 A.D.2d 822, 573 N.Y.S.2d 194 (2d Dep't 1991) (declining to enforce contract where party's name was on the contract but party did not sign contract); *Pevensey Press, Ltd. v. Prentice-Hall, Inc.*, 161 A.D.2d 500, 501, 555 N.Y.S.2d 769, 770 (1st Dep't 1990) (dismissing complaint as to defendant and holding "there is no basis for holding a defendant liable for breach of a contract to which it was not a party").

Scientific Games Corporation is neither mentioned in the contract nor a signatory to the contract. Complaint, Ex. A. Scientific Games Corporation International, Inc. does not exist, and is also not a signatory. *Id.;* Potts Aff. ¶ 2. Accordingly, Zurcaled has no viable contract-based claim against either Scientific Games or Scientific Games Corporation International, Inc.

## CONCLUSION

For each of the foregoing reasons, defendants respectfully request that the Court dismiss the complaint with prejudice.

Dated: New York, New York
        June 25, 2007

                                    Respectfully submitted,

                                    THELEN REID BROWN
                                    RAYSMAN & STEINER LLP

                                    By: _____
                                        Scott H. Wyner
                                        875 Third Avenue
                                        New York, New York 10022
                                        (212) 603-2000

                                    Attorneys for Defendants Scientific
                                    Games International Inc. and
                                    Scientific Games Corporation

NY #1161692

18