UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x  ECF CASE
ZURCALED INTERNATIONAL, INC.,

                              Plaintiff,                    **AFFIDAVIT**

                       -against-                   Case No.: 07 Civ. 4066
                                                                                                  (LBS)
SCIENTIFIC GAMES CORPORATION, SCIENTIFIC
GAMES INTERNATIONAL, INC. and SCIENTIFIC
GAMES CORPORATION INTERNATIONAL, INC.,

                              Defendants.
------------------------------------------------------------------------x

STATE OF NEW YORK  )
                              ss.:
COUNTY OF NEW YORK )

      Alan G. Katz, being duly sworn, deposes and says:

      1.     I am corporate counsel to plaintiff, Zurcaled International, Inc. ("Zurcaled") and have been so for the past fifteen years. I represented Zurcaled with regard to the consulting agreement dated December 10, 2003 ("Consulting Agreement") which forms the basis of this action. I negotiated the Consulting Agreement on behalf of Zurcaled. I also represented Zurcaled in the connection with all relevant communications with defendants Scientific Games.[1] As such, I have personal knowledge of the facts and circumstances set forth herein.

      2.     I submit this affidavit in opposition to defendants' motion to dismiss. As set forth in the accompanying memorandum of law, the defendants' motion is procedurally defective, and should be denied out of hand. Defendants' motion is based entirely on matters outside the pleadings. However, even if defendants' arguments are considered, there has been no breach by Zurcaled. In fact, Zurcaled is entitled to its

---

[1] Defendants are hereinafter collectively referred to as "Scientific Games".

Compensation pursuant to the explicit terms of the Consulting Agreement, which is now before the Court.

3. Based upon the admissions contained in defendants' motion, which all fall outside the pleadings, and because of the uncontradicted facts with regard to the award of the Puerto Rico Lottery, the motion should be converted to one for summary judgment (Rule 56 FRCP), and judgment should be granted in favor of Zurcaled. Quite simply, the triggering event occurred (i.e., the award of the Puerto Rico Lottery to defendants) which entitles Zurcaled to compensation pursuant to the explicit terms of the Consulting Agreement. No subsequent conduct by, or on behalf of Zurcaled, could affect Zurcaled's right to that Compensation.

### The Consulting Agreement.

4. The Consulting Agreement[2] was entered into between defendants and Zurcaled on December 10, 2003. It was negotiated by counsel for both parties. Pursuant to the terms thereof, Zurcaled was to provide consulting services concerning defendants' "responding to a Request For Proposal ("RFP") for an online lottery/electronic public gaming network issued by the Commonwealth of Puerto Rico, Department of Treasury - - Loteria Electronica ("Puerto Rico Lottery").[3] Consulting Agreement, para. 1.

5. Under its explicit terms, Consultant's services were to terminate "on [the] award of the RFP . . . ." Consulting Agreement, para. 1.

6. At the heart of this controversy, is defendants' "buyer's remorse". Since

---

[2] The Consulting Agreement is annexed to Zurcaled's complaint as Exhibit "A" and is annexed to the Affidavit of Larry A. Potts ("Potts Aff.") submitted on behalf of defendants as Exhibit A.
[3] The defined terms of the Consulting Agreement shall maintain the same definition herein.

2

defendants were awarded the Puerto Rico Lottery, Zurcaled is entitled to receive:

> 3.5% of all remuneration actually received by Company ("Compensation"), without deduction, by reason of all sales of online games (now known or hereinafter developed) sold through the Puerto Rico Lottery network ….

Consulting Agreement, para. 4.B.

7.  This Compensation is to continue:

> for as long as Company, or any affiliate of, or successor to Company, continues to derive revenues from the Puerto Rico Lottery or any successor thereto, whether public or private. Without limiting the foregoing, Company shall pay to Consultant Compensation from revenues derived by Company from the contract resulting from the award of the RFP and any extensions, renewals or modifications thereof.

Consulting Agreement, para. 4.C.

8.  As a practical application of the foregoing, each time an online lottery ticket is sold in Puerto Rico, Zurcaled is entitled to a portion of each such sale. Just in respect of the initial contract signed between the Puerto Rico Lottery and defendants, without consideration of any extensions, renewals or modifications, Zurcaled's contract is currently valued at approximately three to four million dollars.

### The Award of the Puerto Rico Lottery to defendants.

9.  Based upon the RFP submitted for the Puerto Rico Lottery, Scientific Games was awarded the contract to provide online lottery services in Puerto Rico. Defendants and Loteria Electronica entered into a contract on September 22, 2004[4]. As of that date, Zurcaled became entitled to Compensation pursuant to paragraph 4.B. of the Consulting Agreement.

---

[4] Complaint, para 16; Potts Aff., para 11.

3

### Zurcaled's Entitlement to Compensation.

10. With the award of the Puerto Rico Lottery contract to defendants, Zurcaled's entitlement to compensation (Consulting Agreement, para. 4.B.) was triggered. As of the date of the award (September 22, 2004), Zurcaled was under no obligation to provide any further Service to defendants (Consulting Agreement, para. 1). Even though Zurcaled's compensation under the Consulting Agreement was in the form of an ongoing payout of a percentage of actual sales from the Puerto Rico Lottery, the Consulting Agreement clearly and unequivocally provided:

> All Compensation to be paid to Consultant hereunder shall be fully earned by Consultant as of the date of the award of the Puerto Rico Lottery to Company, notwithstanding that payment of such Compensation shall be payable at a later date.

Consulting Agreement, para. 4.D.

11. Thus, it is unequivocal, pursuant to the explicit terms of the Consulting Agreement that, (a) Zurcaled was entitled to its Compensation as of September 22, 2004, (b) Zurcaled was required to provide no further Services to defendants, and (c) Zurcaled's Compensation was fully earned, notwithstanding that the Compensation was to be paid out over the term that defendants operated the Puerto Rico Lottery.

Moreover, despite defendants' claim of a subsequent breach, the Consulting Agreement states:

> No subsequent breach of the Agreement by Consultant, expiration or termination of the Agreement (except only as provided in Section 16) or, death of Ernesto J. De La Cruz, shall effect Consultant's right to the payment of Compensation.

Consulting Agreement, para. 4.D.

12. Despite defendants' claim of breach (which Zurcaled vehemently denies),

Zurcaled is still entitled to its full compensation under the terms of the Consulting Agreement. At best, defendants are relegated, if they so desire, to attempt to assert a counterclaim against Zurcaled for its purported breach. However, such counterclaim would not affect Zurcaled's right to payment under the Consulting Agreement. To prevail on such a counterclaim, defendants will be required to prove actual damages caused by Zurcaled's alleged wrongful conduct. This will likely be impossible since defendants are now operating the Puerto Rico Lottery. There have been no damages.

13. Defendants argue that Zurcaled's alleged breach, by failing to "cooperate", allows them to void their payment obligation to Zurcaled. However, it is clear and unequivocal that the Consulting Agreement provides that: "No subsequent breach of the Agreement by Consultant ... shall effect Consultant's right to the payment of Compensation." Consulting Agreement, para. 4.D.

14. Alternatively, defendants argue that as a result of the alleged conduct of Zurcaled, it terminated the contract. However, clearly set forth in the Consulting Agreement, para. 4.D., is the provision that no "termination of the Agreement (except only as provided in Section 16) ... shall effect Consultant's right to the payment of Compensation." Accordingly, had there been a breach by Zurcaled, and should that breach have risen to the level that the Consulting Agreement could be terminated, defendants explicitly contracted away any right to avoid payment based upon breach or termination of the Agreement.

15. The exception to the termination prohibition is found at Section 16, which provides no relief to defendants. In support of its argument for termination, defendants rely upon para. (Section) 16.i. which states:

> If, during the term of the contract, Company is notified by any regulatory agency that the conduct of business with Consultant will jeopardize Company's license or ability to be licensed because of improper Consultant Conduct, this contract to provide Services shall terminate ....

Consulting Agreement, para. 16.i.

16. Nowhere in the papers submitted by defendants, or in any of the correspondence between Zurcaled and defendants which pre-dated this action, have defendants ever alleged "improper Consultant Conduct." The only allegations leveled against Zurcaled, has to do with its failure to cooperate - - which is not a predicate to terminate the Consulting Agreement and forfeit Compensation.

17. Moreover, defendants were never "notified by any regulatory agency" concerning any such conduct. The ruse of terminating the Agreement based on this evidence is indicative defendants' improper and bad faith motivations.[5]

18. The hearsay set forth by defendants to support its claim for termination, render no different result:

   a. Exhibit "E" to the Potts Affidavit is a newspaper article which predates the award of the RFP to defendants. This article reports that three companies responding to the RFP "have been accused of some 'ethical issues', which are being investigated by an assessment committee appointed to evaluate the proposals." (Potts Aff., Ex. E at 1). Nowhere in that article is there any indication or any suggestion that defendants were "notified by any regulatory agency that the conduct of the business with Consultant will jeopardize company's license or ability to be

---

[5] In the event the Court believes that there is a factual issue as to whether Zurcaled was the subject of an investigation and whether defendants were notified of such by "any regulatory agency", it is submitted that limited discovery be allowed so that subpoenas may be issued in Puerto Rico to the appropriate regulatory agencies including, The Commonwealth of Puerto Rico, Department of Treasury, so discovery may be taken on this limited issue.

6

licensed because of improper Consultant Conduct". (Potts Aff., Ex. E at 1). Moreover, this alleged investigation occurred prior to the award of the RFP to defendants and, as such, one could surmise that since the award was ultimately made to defendants, that there was no wrongdoing found.

  b. Exhibit "F" to the Potts Affidavit reflects a May 6, 2005 House Resolution of the House Of Representatives of the Commonwealth of Puerto Rico. That Resolution reflects that an investigation would be conducted "regarding the complaints of business owners and the betting public concerning the alleged existing discomfort and losses supposedly caused by changes made by the technological and administrative functioning of the Electronic Lottery". (Potts Aff., Ex. F at 2). Here, the investigation pertains to why, from a technological standpoint, a change was made from the former operator to defendant. There is absolutely no suggestion that the investigation had to do with any alleged wrongdoing and particularly, any alleged wrongdoing by Zurcaled which would "jeopardize [Scientific Games'] license or ability to be licensed because of improper Consulting Conduct." Consulting Agreement, para. 16.i.

  c. Exhibit "G" to the Potts Affidavit contains a June 29, 2005 House Resolution of the House Of Representatives of the Commonwealth of Puerto Rico. Reflected therein, is a Resolution which authorizes the conduct of "an investigation in regards to the process undertaken by the Treasury Department to reconfigure the operations of the Electronic Lottery and to put into effect the new system for the various games, and on the negative effects, if any exist, on the revenue generated by that activity for the Treasury, due to problems that allegedly they are confronting

with its implementation." (Potts Aff., Ex. G at 1). The subject matter of this investigation pertains to the "process undertaken by the Treasury Department to reconfigure the operations of the Electronic Lottery ... due to problems that allegedly they are confronting with its implementation". Id. This has nothing to do with improper conduct and more specifically, has nothing to do with any conduct, or alleged conduct of Zurcaled which "will jeopardize Company's license or ability to be licensed because of improper Consultant Conduct . . . ." Consulting Agreement, para. 16.i.

d. Exhibit "H" to the Potts Affidavit is an April 5, 2005 Senate Resolution of the Senate of Puerto Rico, Commonwealth Of Puerto Rico. Similar to the Resolutions put forth above, this Resolution had nothing to do with improper conduct or, the specific conduct of Zurcaled which would affect the rights of defendants. Rather, by this Resolution the Financial Affairs Committee of the Senate of Puerto Rico was ordered to "conduct an investigation regarding the operation of the new electronic system of the lottery and to determine the impact, if any, that this change to a new operating system of the Electronic Lottery could have on the revenues of the Government Of Puerto Rico." (Potts Aff., Ex. H at 2). This hardly represents the purported improper conduct of Zurcaled for which it is relied upon.

<u>Zurcaled fulfilled its duty to cooperate under the Consulting Agreement</u>.

19. Paragraph 16.i. of the Consulting Agreement requires Zurcaled to provide information to defendants of its "good character, honesty, integrity and reputation...." In compliance with defendants' request for such, Zurcaled, by transmittal dated April 8, 2003, presented to defendants its completed International Confidential Business Entity

8

Questionnaire, its Release Authorization - Business Entity, its Personal History Record, its Release Authorization - Individual and a portion of its 2002 tax return. A copy of such submittals are annexed hereto as Exhibit "A".

20. Moreover, by e-mail exchange on May 5, 2003, and then again on May 7, 2003, Zurcaled provided additional information to defendants as requested concerning purported tax liens filed against Zurcaled. A copy of the e-mail exchange is annexed hereto as Exhibit "B".

21. Defendants also allege without specific reference to any provision in the Consulting Agreement that Zurcaled had a continuing duty, of an unspecified nature, to cooperate with it and provide information following the award of the RFP to defendants. However, as previously stated, all of Zurcaled's obligations to defendants terminated on September 22, 2004, the date of the award of the RFP - - "Consultant shall provide Services commencing on the date hereof and terminating on the award of the RFP ...." Consulting Agreement, para. 1.

22. Notwithstanding, following the award of the RFP, defendants requested additional information from Zurcaled concerning the services it provided under the Consulting Agreement. The protestations of defendants to the contrary, and notwithstanding that Zurcaled had no obligation to cooperate at such time, Zurcaled offered to cooperate and provide information to defendants, although such offer was rejected.

23. Annexed hereto as Exhibit "C", is my letter to defendants' counsel dated March 21, 2005. Therein, Zurcaled's offer to cooperate is unequivocal:

> In response to Scientific Games' request, I have advised you that
> Zurcaled believes that its duty to cooperate, if any, does not extend

to the parameters requested by Scientific Games. Nonetheless, I have also advised that Zurcaled will cooperate in providing certain information to further Scientific Games' investigation of the "allegations". Zurcaled has offered to respond to Scientific Games questioning as follows:

i.      Zurcaled will respond to any particular allegation regarding its conduct in Puerto Rico and will state whether or not the allegations are true or false.

ii.     Zurcaled will provide Scientific Games, if questioned, with the details of the Services it performed for Scientific Games regarding the Lottery in Puerto Rico.

Although we did not discuss this during our telephone conversations, Zurcaled has advised that it will, if requested, provide all the foregoing under oath.

24.     To argue that Zurcaled refused to cooperate is disingenuous. Zurcaled offered to cooperate and the offer to cooperate was rejected by defendants. Defendants took issue with Zurcaled's position that it would not identify those people it contacted in Puerto Rico. Zurcaled maintained that this information was proprietary and, in any event, did not constitute a contractual obligation.

25.     Thus, to the extent that the defendants' motion is based upon plaintiff's alleged failure to cooperate, the motion should be denied since there is no such requirement in the Consulting Agreement. Moreover, even if there was such a requirement, the exhibits set forth herein (Exhibit "A" - "C") unequivocally establish Zurcaled's cooperation and/or offer to cooperate. At the very least, the sufficiency of Zurcaled's cooperation in accordance with the terms of the Consulting Agreement, is a question for the trier of fact.

Conclusion.

26.     Defendants' motion should be denied in its entirety. The defendants'

motion is improper under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion is based entirely on evidence outside the pleadings. Moreover, the terms of the Consulting Agreement unequivocally establish plaintiff's right to judgment. Accordingly, the Court shall convert the motion to a motion for summary judgment pursuant to Rule 12(b)(6) and Rule 56 and enter judgment in favor of plaintiff.

WHEREFORE, it is respectfully requested that the defendants' motion be denied in its entirety, this motion be treated as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and that judgment be entered in favor of plaintiff for the relief demanded in the complaint and that the Court grant such further relief that it deems to be just and proper.

_____
Alan Katz

Sworn to before me this
3rd day of August, 2007.

JACK RAMOS
Notary Public, State of New York
No. 01RA6046532
Qualified in Nassau County
Commission Expires August 14, 20 10