# TABLE OF CONTENTS

Page

TABLE OF CONTENTS.................................................................. i

TABLE OF AUTHORITIES ........................................................... iii

PRELIMINARY STATEMENT ....................................................... 1

STATEMENT OF FACTS.............................................................. 2

ARGUMENT

      POINT I.    Summary Judgment Should Be Granted
                 In Favor of Zurcaled ............................................ 4

          A.    Defendants' 12(b)(6) motion should be
                converted to a Rule 56 motion for summary
                judgment ............................................................. 4

          B.    The uncontroverted facts demonstrate that
                Zurcaled is entitled to summary judgment ........... 5

          C.    The  only way to affect Zurcaled's right to
                payment is by reason of notification to
                defendants "by any regulatory agency" of
                "improper Consultant Conduct" pursuant to
                Section 16 of the Consulting Agreement,
                which did not occur ............................................. 9

      Point II    Defendants' Motion to Dismiss Should Be
                 Denied .............................................................. 13

          A.    Defendants' 12(b)(6) motion should be denied
                because defendants rely on extrinsic evidence .. 13

          B.    Defendants' 12(b)(6) motion should be denied
                because defendants have not met their
                burden of proof.................................................. 15

**Point III**    Plaintiff has not Materially Breached the
Consulting Agreement...............................20

      A.    Failure to cooperate with defendants'
investigation is not a material breach
of the contract...........................................20

      B.    Factual issues exist as to whether
Zurcaled cooperated with defendants'
investigation..............................................23

**CONCLUSION** ............................................................................25

# TABLE OF AUTHORITIES

## <u>CASES</u>

Page

<u>232 Broadway Corp. v. New York Property Ins. Underwriting Assoc.</u>,
206 A.D.2d 419 (2d Dep't, 1994) ...........................................................21

<u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) .................6

<u>Baker v. Pataki</u>,
85 F.3d 919, 922 (2d Cir., 1996)............................................................17

<u>Bankers Trust Co. v. Rhoades</u>,
859 F.2d 1096, 1098 (2d Cir. 1988), *cert. denied*,
490 U.S. 1007 (1989) ...................................................................... 13, 17

<u>Bernheim v. Litt</u>,
79 F.3d 318, 321 (2d Cir., 1996)............................................................17

<u>Carione v. United States of America</u>,
368 F.Supp.2d 186 (E.D.N.Y., 2005) .......................................................4

<u>Commerce Funding Corp. v. Comprehensive</u>,
No. 01 Civ. 3796 2005 WL 447377 at *14 (S.D.N.Y. 2005) ...................20

<u>Cortec Industries, Inc. v. Sum Holding L.P.</u>,
949 F.2d 42 (2d Cir., 1991)............................................................. 13, 15

<u>Cosmas v. Hassett</u>,
886 F.2d 8, 11 (2d Cir.1989)..................................................................16

<u>Devine v. United States</u>,
202 F.3d 547, 551 (2d Cir. 2000)............................................................5

<u>Dwyer v. Regan</u>,
777 F.2d 825, 828-29 (2d Cir.1985).......................................................16

<u>Felix Franks Assocs., Ltd. v. Austin Drugs, Inc.</u>,
111 F.3d 284 (2d Cir.1997)....................................................................20

<u>Fonte v. Board of Managers of Continental Towers Condominium</u>,
848 F.2d 24, 25 (2d Cir., 1988)................................................................5

Greenfield v. Philles Records, Inc.,
    98 N.Y.2d 562, 569, 750 N.Y.S.2d 565 (2002) ........................................ 8

Haden v. Consolidated Edison Co. of New York, Inc.,
    45 N.Y.2d 466 (1978) ........................................................................... 22

Hishon v. King & Spalding,
    467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984) ......... 16

H.J., Inc. v. Northwestern Bell Tel. Co.,
    492 U.S. 229, 249-50, 109 S.Ct. 2893, 2905-06,
    106 L.Ed.2d 195 (1989) ........................................................................ 16

Hughes v. Rowe,
    449 U.S. 5, 10 (1980) ........................................................................... 16

International Audiotext Network, Inc. v. AT&T Co.,
    62 F.3d 69, 72 (2d Cir., 1995) .......................................................... 13, 14

Jafari v. Wally Findlay Galleries,
    741 F.Supp. 64, 68 (S.D.N.Y., 1990) .................................................... 20

Lawrence v. I.N.S.,
    00 CIV. 2154, 2000 WL 1864040 at *3 (S.D.N.Y. 2000) .......................... 5

Marcello v. Long Island R.R.,
    465 F.Supp. 54 (S.D.N.Y., 1979) .......................................................... 22

Newman & Schwartz v. Asplundh Tree Export Co., Inc.,
    102 F.3d 660, 662 (2d Cir. 1996) .......................................................... 13

O'Dell v. Trans World Entertainment Corp.,
    153 F.Supp.2d 378 (S.D.N.Y., 2001) .................................................... 21

Reuben H. Donnelley Corp. v. Mark I Marketing Corp.,
    893 F.Supp. 285 (S.D.N.Y., 1995) ........................................................ 22

Scheuer v. Rhodes,
    416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) ............ 16

Shaw v. Bronfman,
    284 A.D.2d 267, 268 (1st Dep't, 2001) .................................................. 21

Siben v. American Airlines, Inc.,
    913 F.Supp. 271, 278 (S.D.N.Y. 1996) .................................................. 16

Stern v. Chang,
   2005 U.S. Dist. LEXIS 9779, 5 (S.D.N.Y. 2005) ......................................5


Truglia v. KFC Corp.,
   692 F.Supp. 271, 276 (S.D.N.Y., 1988),
   aff'd Truglia v. KFC, 875 F.2d 308 (2nd Cir 1989) .................................20


Villager Pond, Inc. v. Town of Darien,
   56 F3d 375, 378 (2d Cir., 1995).............................................................16

Yarde v. Good Samaritan Hosp.,
   360 F.Supp.2d 552 (S.D.N.Y., 2005).....................................................22

## STATUTES

Rule 12 (b)(6) of Fed. Rules Civ. Procedure ...................................................13

## PRELIMINARY STATEMENT

Plaintiff Zurcaled International Inc. ("Zurcaled") respectfully submits this memorandum of law in support of its request that summary judgment be granted to plaintiff pursuant to Rule 12(b)(6) and Rule 56 and in opposition to defendants' motion to dismiss. Zurcaled is entitled to summary judgment because the record before this Court overwhelmingly establishes: (i) the existence of a written consulting agreement between Zurcaled (the consultant), and defendants Scientific Games (the lottery games operator) (ii) plaintiff performed the contract in accordance with its terms (iii) defendants were awarded a contract to operate the Puerto Rico Lottery and (iv) defendants Scientific Games breached a material term of the agreement by failing to pay to plaintiff, commission payments that plaintiff earned.

Defendants were awarded the contract to operate the Puerto Rico Lottery. At that point, defendants were obligated to pay and plaintiff was entitled to receive, commission on all income received through lottery ticket sales, under the terms of the consulting agreement. Defendants refused to pay plaintiff commissions owed; as a result plaintiff was forced to bring the instant action.

Defendants filed a motion to dismiss under Rule 12 (b)(6), in response to plaintiff's complaint. Defendants attached eleven exhibits to its motion, ten of which are outside of the pleadings. Therefore, plaintiff requests that this motion be treated as a motion for summary judgment under Rule 12 (b)(6) and Rule 56 and requests that judgment be entered in plaintiff's favor.

## STATEMENT OF FACTS

On December 10, 2003, the parties entered a written Consulting Agreement.[1] Under the agreement, plaintiff Zurcaled was obligated to provide consulting services to defendants Scientific Games. This included assisting defendants in responding to a Request For Proposal ("RFP") to obtain a contract to operate an online lottery/electronic public gaming network issued by the Commonwealth of Puerto Rico, Department of Treasury - - Loteria Electronica ("Puerto Rico Lottery").[2]  (Katz Aff. ¶ 4).

Plaintiff performed consulting services under the contract and based upon the RFP submitted for the Puerto Rico Lottery, Scientific Games was awarded the contract to provide online lottery services in Puerto Rico.  Defendants and Loteria Electronica entered into a contract on September 22, 2004. (Katz Aff. ¶9). Under the explicit terms of the Consulting Agreement, plaintiff's services were to terminate on the award of the RFP. (Katz Aff. ¶2).

Zurcaled's entitlement to compensation was triggered with the award of the Puerto Rico Lottery contract to defendants. (Katz Aff. ¶10). According to the terms of the Consulting Agreement, plaintiff would receive 3.5% of all remuneration actually received by defendants by reason of all sales of online games (lottery tickets) sold through the Puerto Rico Lottery network. (Katz Aff. ¶6).

Defendants began operating the lottery on March 16, 2005. (Potts Aff. Ex.

---

[1] The Consulting Agreement is annexed to Zurcaled's complaint as Exhibit "A" and is annexed to the Affidavit of Larry A. Potts ("Potts Aff.") submitted on behalf of defendants as Exhibit A.
[2] The defined terms of the Consulting Agreement shall maintain the same definition herein.

F at 1). On March 3, 2005, defendants began probing plaintiff for information, citing paragraphs 6 and 16 of the Consulting Agreement. Defendants' alleged basis seeking information from plaintiff was purported "allegations in the press and from various legislative sources" that the contract was attained based on illegal conduct by Scientific Games. (Potts Aff. Ex. I).

At that point, Zurcaled was under no obligation to provide any further service to defendants. (Katz Aff. ¶5). Further, plaintiff had already complied with its disclosure requirements. Paragraph 16.i. of the Consulting Agreement required Zurcaled to provide information to defendants of its "good character, honesty, integrity and reputation...." In compliance with defendants' request for such, Zurcaled, by transmittal dated April 8, 2003, presented to defendants its completed International Confidential Business Entity Questionnaire, its Release Authorization - Business Entity, its Personal History Record, its Release Authorization - Individual and a portion of its 2002 tax return. (Katz Aff. ¶19).

Moreover, by e-mail exchange on May 5, 2003, and then again on May 7, 2003, Zurcaled provided additional information to defendants as requested concerning purported tax liens filed against Zurcaled. (Katz Aff. ¶20).

Notably, defendants' March 2005 notice to plaintiff of this investigation came long after September 22, 2004, when Scientific Games was awarded the contract to operate the Puerto Rico Lottery and plaintiff's obligations to defendant had ended. Although defendants had commenced operation of the Puerto Rico Lottery on March 16, 2005, defendants refused to pay commissions to plaintiff as required by the agreement. (Plaintiff's Complaint ¶ 19).

3

Defendants now claim that they have no obligation to pay commission to Zurcaled because Zurcaled allegedly breached section 16 of the Consulting Agreement. (Potts Aff.). Despite defendants' claim of a subsequent breach, the Consulting Agreement states: according to the terms of the agreement, no subsequent breach of the Agreement by Consultant, expiration or termination of the Agreement shall affect plaintiff's right to the payment of Compensation. (Katz Aff. ¶11).

## ARGUMENT

### Point I

### Summary Judgment Should Be Granted
### In Favor of Zurcaled

#### A. Defendants' 12(b)(6) motion should be converted to a Rule 56 motion for summary judgment

Defendants have chosen to bring their motion under Rule 12(b)(6) which reads, in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Federal courts have "complete discretion" to convert a 12(b)(6) motion to a Rule 56 motion for summary judgment. Carione v. United States of America, 368 F.Supp.2d 186 (E.D.N.Y., 2005).

4

If the language of a statute or rule is clear and unambiguous, the court must look no farther than the words themselves and interpret the statute or rule based upon the plain meaning of those words. Lawrence v. I.N.S., 00 CIV. 2154, 2000 WL 1864040 at *3 (S.D.N.Y. 2000), citing Devine v. United States, 202 F.3d 547, 551 (2d Cir. 2000). The language of Rule 12(b)(6), *supra*, makes it painstakingly clear that, if the defendant chooses to submit extraneous material, which the defendant in this case has, the court must either exclude the extraneous material, or convert the Rule 12(b)(6) motion to one for summary judgment. See Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir., 1988) (providing district courts with two options for a 12(b)(6) motion when matters outside the pleadings are presented: exclusion of the materials and deciding the motion on the complaint alone; or conversion of the motion to one for summary judgment under Rule 56).

This motion is ripe for conversion. There are no factual issues which would preclude Zurcaled's *prima facie* right to recovery and, the extraneous documents proffered by defendants establish as a matter of law, that defendants have no viable defense to Zurcaled's claim.

### B. The uncontroverted facts demonstrate that Zurcaled is entitled to summary judgment

It is well established under Fed. R. Civ. P. 56(c) that summary judgment is appropriate when there is no genuine issue as to any material fact exists and a matter can be resolved as a matter of law. Stern v. Chang, 2005 U.S. Dist. LEXIS 9779, 5 (S.D.N.Y. 2005). A material issue is one which might affect the

5

outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

> i.       There is no genuine issue of material fact

Here, no genuine issue exists as to any material fact.  Pursuant to the
terms of the Consulting Agreement, the triggering event, the award of the Puerto
Rico Lottery to defendants on September 22, 2004, occurred, thereby entitling
Zurcaled to its compensation.  In addition, the Consulting Agreement states that
no subsequent conduct by, or on behalf of Zurcaled, could affect its right to
compensation. Accordingly, summary judgment should be granted in favor of
Zurcaled.  In fact, Zurcaled was not required to provide any further services to
defendants after the Puerto Rico Lottery was awarded to defendants on
September 22, 2004 (Consulting Agreement, para. 1), and Zurcaled's entitlement
to compensation was fully earned as of that date, even though payment of that
compensation was payable thereafter. (Consulting Agreement ¶ 4.D.)

> ii.      Defendants Breached Their Payment Obligation

Paragraph 4.B of the Consulting Agreement states that, in the event
defendants were awarded the Puerto Rico Lottery, Zurcaled was entitled to
receive:

> 3.5% of all remuneration actually received by
> Company ("Compensation"), without deduction, by
> reason of all sales of online games (now known or
> hereinafter developed) sold through the Puerto Rico
> Lottery network…".

In addition, pursuant to paragraph 4.C of the Consulting Agreement, that
Compensation to Zurcaled was to continue:

6

> for as long as Company, or any affiliate of, or
> successor to Company, continues to derive revenues
> from the Puerto Rico Lottery or any successor
> thereto, whether pubic or private. Without limiting the
> foregoing, Company shall pay to Consultant
> Compensation from revenues derived by Company
> from the contract resulting from the award of the RFP
> and any extensions, renewals or modifications
> thereof.

Also, despite the fact that compensation may have been payable at a later

date, pursuant to Paragraph 4.D of the Consulting Agreement, it is unequivocal

that all compensation was earned by Zurcaled as of September 22, 2004, the

date the Puerto Rico Lottery was awarded to defendants. Paragraph 4.D reads

as follows:

> All Compensation to be paid to Consultant hereunder
> shall be fully earned by Consultant as of the date of
> the award of the Puerto Rico Lottery to Company,
> notwithstanding that the payment of such
> Compensation shall be payable at a later date.

Simply put, once defendants were awarded the Puerto Rico Lottery, Zurcaled's

compensation was fully earned, notwithstanding that the quantum of

compensation was determined as each lottery ticket was sold in Puerto Rico.

(See Katz Aff. ¶ 8, 11).

Moreover, defendants agreed to a provision in the Consulting Agreement

whereby no subsequent conduct by Zurcaled could affect this result:

> No subsequent breach of the Agreement by
> Consultant, expiration or termination of the
> Agreement (except only as provided in Section 16) or
> death of Ernesto J. De La Cruz, shall effect
> Consultant's rights to the payment of Compensation.

7

Consulting Agreement, para. 4.D.    Thus, once the Puerto Rico Lottery was awarded to defendants, subject to Section 16 termination discussed below, there was no action or inaction on Zurcaled's part that could affect Zurcaled's right to payment under the Consulting Agreement.

Defendants and Loteria Electronica entered into a contract to provide online lottery services in Puerto Rico on September 22, 2004. (Complaint at ¶16; Potts Aff. ¶11). It is unequivocal that, as of that date, (a) Zurcaled was entitled to Compensation; (b) Zurcaled was under no obligation to provide any further services to defendants; (c) Zurcaled's Compensation was fully earned; and (d) no subsequent breach by Zurcaled (subject to Section 16) could affect Zurcaled's right to payment under the Consulting Agreement. The New York Court of Appeals holds:

> The best evidence of what parties to a written agreement intend is what they say in their writing ( Slamow v. Del Col, 79 N.Y.2d 1016, 1018, 584 N.Y.S.2d 424, 594 N.E.2d 918 [1992] ). Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms ( see e.g. R/S Assoc. v. New York Job Dev. Auth., 98 N.Y.2d 29, 32, 744 N.Y.S.2d 358, 771 N.E.2d 240, rearg. denied 98 N.Y.2d 693, 747 N.Y.S.2d 411, 775 N.E.2d 1291 [2002]; W.W.W. Assoc. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566 N.E.2d 639 [1990] ).

Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569, 750 N.Y.S.2d 565 (2002). The terms of the agreement are clear and unambiguous and defendants cannot and have not disputed the aforesaid facts. Therefore, summary judgment should be granted in favor of Zurcaled.

> ### C. The only way to affect Zurcaled's right to payment is by reason of notification to defendants "by any regulatory agency" of "improper Consultant

### Conduct" pursuant to Section 16 of the Consulting Agreement, which did not occur

Although defendants rely on Section 16 of the Consulting Agreement as the basis for termination and the discharge of defendants' payment obligation, defendants' reliance is misplaced. Specifically, defendants rely on para. 16.i, which reads as follows:

> If, during the term of the contract, Company is <u>notified by any regulatory agency that the conduct of business with Consultant will jeopardize company's license or ability to be licensed because of improper Consultant Conduct</u>, this contract to provide Services shall terminate...

(Emphasis added).

The evidence put forth by defendants to show that defendants were "notified by any regulatory agency" of "improper Consultant Conduct" fails on this issue. Defendants' evidence is as follows:

> a) Exhibit "E" to the Potts Affidavit puts forth a newspaper article which predates the award of the RFP to defendants.

This article reports that the three companies responding to the RFP "have been accused of some 'ethical issues', which are being investigated by an assessment committee appointed to evaluate the proposals." (Katz Aff. at ¶ 18.a). As a preliminary matter, a newspaper article is hardly evidence that can be relied upon by the Court. Notwithstanding the nature of the evidence, however, nowhere in that article is there any indication or any suggestion that defendants were "notified by any regulatory agency that the conduct of the business with Consultant will jeopardize company's license or ability to be

9

licensed because of improper Consultant Conduct". And as a practical matter, this investigation occurred prior to the award of the RFP to defendants and, as such, one could surmise that since the award was ultimately made to defendants, that there was no wrongdoing found. (Katz Aff. at ¶ 18.a).

        b) Exhibit "F" to the Potts Affidavit reflects a May 6, 2005 House Resolution of the House Of Representatives of the Commonwealth of Puerto Rico.

That Resolution reflects that an investigation would be conducted "regarding the complaints of business owners and the betting public concerning the alleged existing discomfort and losses supposedly caused by changes made by the technological and administrative functioning of the Electronic Lottery". (Katz Aff. ¶ 18.b). Here, the investigation pertains to why, from a technological standpoint, a change was made from the former operator to defendant. (Katz Aff. ¶ 18.b). There is absolutely no mention, or a hint of suggestion, that the investigation had to do with any alleged wrongdoing and particularly, any alleged wrongdoing by Zurcaled which would "jeopardize Company's license or ability to be licensed because of improper Consulting Conduct." (Katz Aff. ¶ 18.b).

        c) Exhibit "G" to the Potts Affidavit contains a June 29, 2005 House Resolution of the House Of Representatives of the Commonwealth of Puerto Rico.

Reflected therein, is a Resolution which authorizes the conduct of "an investigation in regards to the process undertaken by the Treasury Department to reconfigure the operations of the Electronic Lottery and to put into effect a new system for the various games, and the negative effects, if any exist, on the revenues generated by that activity for the Treasury, due to problems that

10

allegedly they are confronting with its implementation." (Katz Aff. ¶ 18.c). Similar to the previous Resolution, the subject matter of this investigation pertains to the "process undertaken by the Treasury Department to reconfigure the operations of the Electronic Lottery … due to problems that allegedly they are confronting with its implementation". This has nothing to do with improper conduct and more specifically, has nothing to do with any conduct, or alleged conduct of Zurcaled which "will jeopardize Company's license or ability to be licensed because of improper Consultant Conduct". (Katz Aff. ¶18.c).

> d) Exhibit "H" to the Potts Affidavit is an April 5, 2005
> Senate Resolution of the Senate of Puerto Rico,
> Commonwealth Of Puerto Rico.

Similar to the Resolutions put forth above, this Resolution had nothing to do with improper conduct or, the specific conduct of Zurcaled which would affect the rights of defendants. (Katz Aff. ¶18.d). Rather, by this Resolution the Financial Affairs Committee of the Senate of Puerto Rico was ordered to "conduct an investigation regarding the operation of the new electronic system of the Lottery and to determine the impact, if any, that this change to a new operating system of the Electronic Lottery could have on the revenues of the Government Of Puerto Rico". (Katz Aff. ¶ 18.d). This hardly represents the purported improper conduct of Zurcaled for which it is relied upon.

Accordingly, it is apparent on the face of the evidence put forth by defendants, that defendants were not "notified by any regulatory agency" of "improper Consultant Conduct" as required to terminate the Consulting Agreement pursuant to Section 16. Therefore, defendants have no defense to

11

avoid its payment obligations to Zurcaled and for all of the reasons set forth above and in the annexed Affidavit and Exhibits, summary judgment should be granted.

### Point II

### Defendants' Motion to Dismiss
### Should Be Denied

#### A.    Defendants' 12(b)(6) motion should be denied because defendants rely on extrinsic evidence

For purposes of defendants' 12(b)(6) motion to dismiss, the court should confine itself to the four corners of the complaint and accept the allegations in the complaint as true. Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1098 (2d Cir. 1988), cert. denied, 490 U.S. 1007 (1989) (accepting allegations of plaintiff's complaint as true when reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6)). Defendants' improper reliance on material outside of the complaint in an attempt to demonstrate that Zurcaled has no claim against the defendants is a fundamentally flawed approach to settled practice under Fed. R. Civ. P. 12(b)(6). Newman & Schwartz v. Asplundh Tree Export Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996) (reversing district court's grant of 12(b)(6) motion to dismiss because of improper reliance upon information outside of the four corners of the complaint).

A complaint, for purposes of overcoming a 12(b)(6) motion to dismiss, is deemed only to include the attached exhibits, and any statements or documents that are incorporated into the complaint by reference. International Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir., 1995); Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir., 1991). But, where a document is not incorporated by reference into the complaint, such as the extraneous documents now proffered by defendants, the court may only consider such documents

13

where the complaint "relies heavily upon [their] terms and effect," thereby rendering the documents "integral" to the complaint. <u>International Audiotext</u>, 62 F.3d at 72.

There is absolutely no mention of, or reference to, the documents defendant seeks to rely on in Zurcaled's complaint, and defendants have not asserted anything to the contrary. (See Plaintiff's Complaint). Moreover, nearly all of the documents are dated after the September 22, 2004 award of the Puerto Rico Lottery to defendants, which is the triggering event to payment under the Consulting Agreement. The documents are as follows:

- <u>Exhibit B</u>:    March 10, 2005 letter from Zurcaled's counsel requesting defendants set forth in writing the information they seek from Zurcaled;

- <u>Exhibit C</u>: March 21, 2005 letter from Zurcaled's counsel offering to cooperate with defendants investigation and provide defendants with information under oath;

- <u>Exhibit D</u>:  April 12, 2005 letter from Zurcaled's counsel advising that Zurcaled will treat defendants' prior correspondence as improper termination of the contract;

- <u>Exhibit E</u>: April 5, 2004 [3] *El Nuevo Dia* newspaper article reporting on a Treasury Department investigation of the three companies that submitted lottery proposals;

- <u>Exhibits F, G, and H</u>: April 2005 – June 2005 Puerto Rico House of Representatives and Senate resolutions calling for an investigation into the decision to switch from the prior lottery provider to defendants;

- <u>Exhibit I</u>:    March 3, 2005 letter from defendants to Zurcaled requesting cooperation with defendants' investigation;

---

[3] While it appears the article is dated April 3, 2004, the "print date" is October 12, 2004, which indicates defendants may not have been aware of the article until after September 22, 2004. (See Potts Aff. Ex. E)

- <u>Exhibit J</u>:  April 6, 2005 letter from defendants to Zurcaled's counsel declaring Zurcaled in breach of contract;

- <u>Exhibit K</u>:  May 5, 2005 letter from defendants to Zurcaled's counsel requesting follow-up information from Zurcaled's prior April 12, 2005 correspondence.

Despite defendants' argument that the motion need not be converted to a summary judgment motion because Zurcaled has notice of all of the documents plaintiff seeks to rely on, that is not the standard under which to analyze defendants' motion to dismiss.  The Second Circuit in <u>Cortec</u>, relied on by defendants, found that, only where plaintiff **relied upon** those documents to frame the complaint may the court consider the documents in analyzing a 12(b)(6) motion.  <u>Cortec Industries, Inc.</u>, 949 F.2d at 48.  The court in <u>Cortec</u> ultimately found that the plaintiff did in fact rely on those documents in bringing the suit, and further found that the documents were "integral to its complaint." <u>Cortec Industries, Inc.</u>, 949 F.2d at 50.

Here, however, the documents at issue have no bearing on Zurcaled's complaint; they were not relied upon, referenced, alluded to or hinted at, and certainly are not "integral".  (See Plaintiff's Complaint; Katz Aff. ¶ 2-3).  Instead, as set forth in the Complaint, Zurcaled relied on the language of the Consulting Agreement and the terms and conditions therein which defendants have breached. (See Plaintiff's Complaint ¶ 24).  See Point I, *supra*.

Accordingly, defendants' motion should be denied.

        **B.**    **Defendants' 12(b)(6) motion should be denied because defendants have not met their burden of proof**

Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50, 109 S.Ct. 2893, 2905-06, 106 L.Ed.2d 195 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984).

On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiff's favor and against the defendants. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989); Dwyer v. Regan, 777 F.2d 825, 828-29 (2d Cir.1985). Siben v. American Airlines, Inc., 913 F.Supp. 271, 278 (S.D.N.Y. 1996); Hughes v. Rowe, 449 U.S. 5, 10 (1980) (finding "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") Thus, the issue is not whether the plaintiff will prevail, (which Zurcaled will, as demonstrated in Point I), but is instead whether the plaintiff should be permitted to introduce evidence in support of its claim. Villager Pond, Inc. v. Town of Darien, 56 F3d 375, 378 (2d Cir., 1995). Accordingly, in analyzing a 12(b)(6) motion, the court must view plaintiff's factual allegations as true, and draw all

reasonable inferences in plaintiff's favor. Baker v. Pataki, 85 F.3d 919, 922 (2d Cir., 1996); see also, Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir., 1996).

As discussed above, the Court should confine its analysis of a 12(b)(6) motion to the four corners of the complaint and take plaintiff's allegations as true. Id.; see also Bankers Trust Co., 859 F.2d at 1098. In its Complaint, Zurcaled alleges, among other things, the following:

- The Consulting Agreement is a valid and enforceable contract. (Plaintiff's Complaint ¶ 23);

- Zurcaled has complied with all of the terms of the Consulting Agreement and has performed all conditions precedent to defendants' obligation to make payment pursuant to the Consulting Agreement and all conditions precedent to defendants' obligation to make payment pursuant to the Consulting Agreement have occurred. (Plaintiff's Complaint ¶ 24);

- Defendants have breached the Consulting Agreement by reason of defendants' failure and refusal to pay those sums owed Zurcaled under the terms of the Consulting Agreement. (Plaintiff's Complaint ¶ 25).

Moreover, Zurcaled has alleged the occurrence of the triggering event to payment under the Consulting Agreement; to wit: the award of the Puerto Rico Lottery to defendants on September 22, 2004. (Plaintiff's Complaint ¶16; Potts Aff. ¶ 11).

Defendants do not argue anywhere in their motion that Zurcaled cannot prove any part of its allegations. Instead, in the face of their obvious breach of the Consulting Agreement, defendants argue that Zurcaled's alleged breach, by failing to "cooperate", allows defendants to void their payment obligation to Zurcaled. (Defendants' Memo of Law at 10). Notwithstanding the fact that their argument falls outside the allegations of the Complaint, defendants are wrong for several additional reasons. Namely, no subsequent breach of the contract could affect Zurcaled's right to payment; Zurcaled had no duty to cooperate; even if Zurcaled had a duty to cooperate, Zurcaled did in fact cooperate; even if Zurcaled had a duty and failed to cooperate with defendants' investigation, that failure is not a material breach of the contract; and factual issues exist as to whether or not Zurcaled cooperated with defendants' investigation.

> i.          No subsequent breach of the contract could affect Zurcaled's right to payment

Protecting against defendants' "buyer's remorse", the terms of the Consulting Agreement sought to ensure Zurcaled's Compensation no matter what later transpired between the parties by including the following provision:

> No subsequent breach of the Agreement by Consultant, expiration or termination of the Agreement (except only as provided in Section 16) or death of Ernesto J. Delacruz, shall effect Consultant's rights to the payment of Compensation.

Consulting Agreement, para. 4.D.

Thus, Zurcaled's conduct following the award of the Puerto Rico Lottery could not affect Zurcaled's right to payment under the Consulting Agreement. Defendants waived their right to terminate the Consulting Agreement by reason

18

of material breach. Nor can defendants be saved by the exception in Section 16, which reads, in pertinent part, as follows:

> If, during the term of the contract, Company is notified by any regulatory agency that the conduct of business with Consultant will jeopardize company's license or ability to be licensed because of improper Consultant Conduct, this contract to provide Services shall terminate…

For the reasons set forth in Point I above, such reliance is misplaced. Defendants were never "notified by any regulatory agency" of "improper Consultant Conduct" as required to terminate the Consulting Agreement pursuant to Section 16.

In any event, as discussed below, any alleged "breach" of Section 16.i is not a material breach of the contract.

*ii.*          *Zurcaled had no duty to cooperate*

Paragraph 1 of the Consulting Agreement reads, in pertinent part, as follows:

> Consultant shall provide Services commencing on the date hereof and terminating on award of the RFP [Request for Proposal] or cessation of the Company's bidding for the Puerto Rico Lottery ("Exclusive Period") for any reason.

As discussed in Point I, the Puerto Rico Lottery was awarded to the defendants on September 22, 2004. Pursuant to Paragraph 1 of the Consulting Agreement, after that date, Zurcaled's Services to defendants ended. Nonetheless, on March 3, 2005, over five months after the award of the Puerto Rico Lottery, defendants requested for the first time that Zurcaled cooperate with their investigation. (See Potts Aff., Ex. I). At that time, Zurcaled had no further obligation to defendants, and, accordingly, was under no duty to cooperate in any investigation.

19

## Point III

### Plaintiff has not Materially Breached the
### Consulting Agreement

**A.    Failure    to    cooperate    with    defendants'
investigation  is  not  a  material  breach  of  the
contract**

Zurcaled's alleged breach of the contract by failing to cooperate with
defendants' investigation is not a material breach of the contract so as to
discharge defendants from their payment obligation.  A material breach of a
contract occurs where a party fails to substantially perform the contract.  Jafari v.
Wally Findlay Galleries, 741  F.Supp. 64, 68 (S.D.N.Y., 1990).  Only where a
material breach occurs is the other party discharged from further performance
under the contract.  Id.  "Material breach of a contract occurs when a party's non-
performance goes to the root of the agreement and is so substantial that it
defeats the purpose of the contract."  Commerce Funding Corp. v.
Comprehensive, No. 01 Civ. 3796 2005 WL 447377 at *14 (S.D.N.Y. 2005),
quoting Felix Franks Assocs., Ltd. v. Austin Drugs, Inc., 111 F.3d 284 (2d
Cir.1997). The failure to tender payment under a contract for the sale of goods is,
for instance, considered a material breach of a contract. Truglia v. KFC Corp.,
692 F.Supp. 271, 276 (S.D.N.Y., 1988), aff'd Truglia v. KFC, 875 F.2d 308 (2nd
Cir 1989).

With regard to the conduct alleged against Zurcaled—its failure to
cooperate on or after March 10, 2005—a "material" breach cannot be found.  The

request to cooperate was made after Zurcaled was under no further obligation to provide Services, and the award of the Puerto Rico Lottery to defendants had been made months before.  Since Zurcaled was retained to provide Services to assist defendants in obtaining the award of the Puerto Rico Lottery—which it did—and since Zurcaled's obligation to provide Services had ceased at the time of the request to cooperate, this subsequent conduct cannot factually be tantamount to a failure to "substantially perform".  It is respectfully suggested that, based on these facts, a material breach, as a matter of law, cannot be sustained.

Furthermore, defendants have failed to demonstrate, through case law or otherwise, as is their burden, that the alleged breach by Zurcaled was material.

Defendants baldly claim that Zurcaled's "prior material breach discharges SGI's performance."  (Defendants' Memo of Law at 8).  However, four of the cases defendants cite as examples of material breaches involve breach of a cooperation clause in an insurance policy, where an insured's duty to cooperate with an insurer's investigation is a material term of an insurance policy, [Shaw v. Bronfman, 284 A.D.2d 267, 268 (1st Dep't, 2001); 232 Broadway Corp. v. New York Property Ins. Underwriting Assoc., 206 A.D.2d 419 (2d Dep't, 1994); 197 A.D.2d 672 (2d Dep't, 1993); O'Dell v. Trans World Entertainment Corp., 153 F.Supp.2d 378 (S.D.N.Y., 2001)]; one case involves a wrongful termination in an employment dispute where the plaintiff alleges violations of due process, a violation of equal protection, and a violation of the prohibition against cruel and unusual punishment.  It is unclear to Zurcaled how even a generous reading of

21

the case, supports defendants' position [Marcello v. Long Island R.R., 465 F.Supp. 54 (S.D.N.Y., 1979)].

Defendants have also "mischaracterized" case law purportedly supporting their statement on page 14 of their Memorandum of Law that "where a party shirks its duty to speak and in fact conceals its breach, the failure to provide the needed information is sufficient to constitute a material breach." The cases defendants rely upon do not find that there was a material breach of contract, do not discuss material breach of any contract, and have no bearing on this issue. Instead, Reuben H. Donnelley Corp. v. Mark I Marketing Corp., 893 F.Supp. 285 (S.D.N.Y., 1995) addresses the question of whether concealment of a breach of a licensing agreement supports a claim for ordinary fraud, which the court found it did not; Haden v. Consolidated Edison Co. of New York, Inc., 45 N.Y.2d 466 (1978) involves an employment discrimination claim with absolutely no discussion of breach of any contract, let alone a material breach of a contract; and Yarde v. Good Samaritan Hosp., 360 F.Supp.2d 552 (S.D.N.Y., 2005), another employment case, involves the relinquishment of an employer's option to dismiss an employee prior to the employee's entitlement to benefits under a pension plan. In that case, the court found that the employee's concealment of wrongdoing, which led the employer's forbearance of its right to dismiss the employee, to be as actionable as where fraud induces positive action. Yarde does not, however, involve the material breach of any contract.

Defendants have no support in case law or otherwise, for their assertions that Zurcaled's alleged failure to cooperate constitutes a material breach of the

22

Consulting Agreement because failing to cooperate with defendants' investigation was **not** a material breach of the Agreement.

### B. Factual issues exist as to whether Zurcaled cooperated with defendants' investigation

In the best case scenario for defendants, there is a question of fact as to whether or not Zurcaled did in fact cooperate with defendants' investigation. Despite the fact that Zurcaled's obligations to defendants terminated upon the award of the Puerto Rico Lottery to defendants, Zurcaled offered to cooperate and provide information to defendants with regard to defendants' investigation. (Katz Aff. ¶ 22, 24). However, defendants rejected Zurcaled's offer to cooperate, as reflected in Zurcaled's letter to defendants' counsel dated March 21, 2005 offering its cooperation in defendants' investigation. (Katz Aff. ¶ 24; see also, Katz Aff., Ex. C). In that letter, Zurcaled unequivocally offered to cooperate with defendants' investigation. The letter reads as follows:

> In response to Scientific Games' request, I have advised you that Zurcaled believes that its duty to cooperate, if any, does not extend to the parameters requested by Scientific Games. Nonetheless, I have also advised that Zurcaled will cooperate in providing certain information to further Scientific Games' investigation of the "allegations". Zurcaled has offered to respond to Scientific Games questioning as follows:
>
> i.  Zurcaled will respond to any particular allegation regarding its conduct in Puerto Rico and will state whether or not the allegations are true or false.
>
> ii. Zurcaled will provide Scientific Games, if questioned, with the details of the Services it performed for Scientific Games regarding the Lottery in Puerto Rico.

23

> Although we did not discuss this during our telephone conversations, Zurcaled has advised that it will, if requested, provide all the foregoing under oath.

Defendants' argument that Zurcaled did not, and would not, cooperate is demonstrated above to be disingenuous. Zurcaled did in fact agree to cooperate with defendants' investigation.  Zurcaled's condition, that it would not identify those people it contacted in Puerto Rico, was an effort to safeguard proprietary information that Zurcaled could not divulge.  (See Katz Aff. paragraph 24). Zurcaled was ready and willing to cooperate with defendants' investigation. Instead, it was defendants who rejected Zurcaled's offer to cooperate and defendants who, effectively, prevented Zurcaled from fulfilling what defendants now, self-servingly, characterize as Zurcaled's contractual obligation to cooperate.

Additionally, prior to the award of the Consulting Agreement, in compliance with defendants' request for information of Zurcaled's "good character, honesty, integrity and reputation..." as required by paragraph 16.i of the Consulting Agreement, on April 8, 2003, Zurcaled presented to defendants its completed International Confidential Business Entity Questionnaire, its Release Authorization—Business Entity, its Personal History Record, its Release Authorization—Individual and a portion of its 2002 tax return. (Katz Aff., Ex. A). Moreover, on May 5 and May 7 of 2003, Zurcaled provided, as requested by defendants, additional information regarding purported tax liens filed against Zurcaled. (Katz Aff., Ex. B).

24

At the very least, whether Zurcaled cooperated in accordance with the terms of the Consulting Agreement is a question for the trier of fact. As such, defendants have again failed to demonstrate that, beyond a doubt, Zurcaled cannot prove its allegations.

---

For all of the reasons set forth above, defendants' motion to dismiss should be denied in its entirety because defendant has failed to demonstrate beyond doubt that Zurcaled did not state sufficient facts to support its breach of contract claim by defendants.

## CONCLUSION

Based on the foregoing, it is respectfully submitted that defendants' 12(b)(6) motion should be denied in its entirety. In addition, defendants' motion should be converted to a Rule 56 motion and summary judgment should be granted in its entirety in favor of Zurcaled.

Dated:       White Plains, New York
             August 2, 2007

                                BARTELS & FEUREISEN, LLP
                                Attorneys for Plaintiff Zurcaled
                                International, Inc.

                                By: _____
                                    David Feureisen (DF 0774)

                                925 Westchester Ave.
                                White Plains, NY 10604
                                (914) 681-7175

25