UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
ZURCALED INTERNATIONAL, INC., :
:
        Plaintiff, :
:
    -against- :
:
SCIENTIFIC GAMES CORPORATION, : Case No. 07 Civ. 4066 (LBS)
SCIENTIFIC GAMES INTERNATIONAL, :
INC. and SCIENTIFIC GAMES :
CORPORATION INTERNATIONAL, INC., :
:
        Defendants. :
:
------------------------------------------------------------X

# DEFENDANTS' MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

THELEN REID BROWN
  RAYSMAN & STEINER LLP
875 Third Avenue
New York, New York 10022
Telephone No. (212) 603-2000
Facsimile No. (212) 603-2001

Defendants Scientific Games and SGI submit this reply memorandum in further support of their motion to dismiss the action commenced by Zurcaled.[1]

Zurcaled does not respond to defendants' motion insofar as it seeks the dismissal of Zurcaled's claims against Scientific Games, which is not a party to the Consulting Agreement, or Scientific Games Corporation International, Inc., which does not exist.[2] *See* Opening Brief, at 17. Consequently, defendants' motion should be granted as unopposed in these respects.

Zurcaled does oppose the motion insofar as SGI seeks the dismissal of the action against it. Zurcaled first argues that defendants' Rule 12 motion should be converted to a motion for summary judgment. Its procedural arguments concerning Rule 12 are thus, at best, moot.

Rather than respond to SGI's substantive arguments on termination for cause, Zurcaled premises its opposition on the untenable proposition that Zurcaled had no obligation to respond to SGI's investigation concerning the allegations of corrupt practices potentially involving Zurcaled in connection with the award of the lottery contract. Alternatively, Zurcaled contends that it satisfied its contractual obligations or that termination is not an available remedy for such a breach. Citing only half the contract clause in question, these arguments blink reality and sound public policy governing New York contracts. Indeed, Zurcaled nowhere addresses the Consulting Agreement's unambiguous requirement that Zurcaled provide SGI with all information that SGI deemed necessary concerning Zurcaled's honesty and integrity; and the conclusive proof of its violation as evidenced in correspondence of Zurcaled's counsel. Its failure to cooperate frustrated SGI's efforts to determine whether Zurcaled had engaged in unlawful conduct and thus required an inference of unlawful conduct and the termination of the Consulting Agreement. Since New York public policy bars re-

---

[1] Defendants use the definitions found in their Memorandum in Support of Motion to Dismiss (the "Opening Brief").

[2] Zurcaled's failure to respond to the submissions on this branch of the motion should be viewed as its implicit concession of its merits, and the claims against these defendants, dismissed. *Firth v. State*, 287 A.D.2d 771, 772, 731 N.Y.S.2d 244, 245 (3d Dep't 2001) ("well settled that the consequence of failing to respond to a fact set forth in motion papers is a deemed admission."); *see People v. Alston*, 126 A.D.2d 731, 731 511 N.Y.S.2d 133, 134 (2d Dep't 1987) (prosecution conceded facts by failing to respond to them in their opposition papers; court required to summarily grant that branch of the defendants motion).

covery where a plaintiff has engaged in corrupt practices in connection with the performance of an otherwise valid contract, it is hardly surprising that Zurcaled ignores the principles that underlie the duty to cooperate.

For these reasons, defendants' motion to dismiss the complaint should be granted.

I. **Plaintiff Moots Its Procedural Objection to Defendants' Dismissal Motion by Seeking Its Conversion to a Motion for Summary Judgment**

Zurcaled contends that defendants' motion should be converted to one for summary judgment, and makes assertions of fact neither explicitly nor implicitly within the pleadings, but then inconsistently applies a Rule 12 analysis to argue that defendants' motion to dismiss should be denied. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Pursuant to Rule 12(B)(6) and in Support of Plaintiff's Request that Defendant's Motion be Converted to a Motion for Summary Judgment ("Plaintiff's Brief"), pp. 4 - 5, 15 - 18). Zurcaled's request for a Rule 56 conversion of the defendants' motion, coupled with its demand for judgment in its favor, renders its procedural discussion moot.

As set forth in the Opening Brief, defendants believe this matter may be resolved on a motion to dismiss. Yet, defendants prevail on their motion whether it is treated as a motion to dismiss or a motion for summary judgment. Plaintiff does not, and indeed, cannot contest the facts established by its counsel's correspondence, as exhibited to the Potts affidavit. Indeed, the only factual matters defendants rely upon are in the public domain or constitute Plaintiff's own conduct evidenced in its counsel's letters qualifying, limiting and, ultimately, refusing to cooperate in SGI's investigation of Zurcaled's conduct.

Zurcaled, without making a cross-motion, claims that it is entitled to summary judgment. However, its only factual proffer is through its attorney, who claims no personal knowledge of Zurcaled's claimed performance of services under the Consulting Agreement. *See* affidavit of Alan Katz sworn to August 3, 2007, ¶¶ 3, 4 *et passim*. It is equally telling that Zurcaled's principal,

2

Ernesto de la Cruz, by whom Zurcaled's services were performed (*see* Consulting Agreement, ¶2) has offered the Court no sworn statement of his own services and no personal account of why Zurcaled and he refused to cooperate with SGI's investigation. Moreover, on a summary judgment motion Zurcaled may not rest its proofs on the allegations of the complaint. *Bartley v. Collins*, 2006 U.S. Dist. LEXIS 28285 at *20-*21 (S.D.N.Y. May 12, 2006); *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 1997 U.S. Dist. LEXIS 2417 at *14 n.4 (S.D.N.Y. Mar. 5, 1997). Its Rule 56.1 Statement is thus fatally defective. *See, e.g.,* Statement, at 2, 4 - 11, *et passim*. In the event the Court elects to treat defendants' motion to dismiss as a motion for summary judgment, however, defendants have submitted their Statement Pursuant to Local Rule 56.1.

## II. Zurcaled's Refusal to Provide Requested Information in Connection with SGI's Investigation of Alleged Unlawful Conduct Required Its Termination

The disposition of SGI's motion turns on Zurcaled's breach of Section 16(i) of the Consulting Agreement under which Zurcaled seeks recovery and SGI's termination of that Agreement under Section 16(ii), neither provision of which is fully cited in Plaintiff's Brief. Section 16 of the Consulting Agreement sets forth circumstances and/or conduct that permits its termination and discharges any further payment obligation. Paragraph 16(i) provides, in full:

> **Consultant specifically acknowledges that Company is subject to the gaming and licensing requirements of various jurisdictions and is obliged to take reasonable efforts to determine the suitability of its business associates. Consultant agrees to cooperate fully with Company in providing it with any information, of whatever nature, that Company deems necessary or appropriate in assuring itself that Consultant possesses the good character, honesty, integrity, and reputation applicable to those engaged in the gaming industry ("Consultant Conduct") and specifically represents that there is nothing in Consultant's background, history or reputation that would be deemed unsuitable under the standards applicable to the gaming industry. If, during the term of the contract, Company is notified by any regulatory agency that the conduct of business with Consultant will jeopardize Company's license or ability to be licensed because of improper Consultant Conduct, this contract to provide Services shall terminate upon written notice by Company i[f] a cure is not effected within sixty days of notice. Upon such termination and subject to Section 16.iii, Consultant shall not receive any further payments.** [emphasis supplied]

3

Zurcaled's citation to this provision omits all of the bolded language, thereby rendering its purpose and meaning unrecognizable. Zurcaled's duty to cooperate is not, as it suggests, embedded in incidental or obscure provisions dealing with a regulatory notice that "the contract of business with Consultant will jeopardize Company's license or ability to be licensed." Rather, Zurcaled's duty to cooperate derives from its specific acknowledgment that SGI is "subject to the gaming and licensing requirements of various jurisdictions and is obliged to take reasonable efforts to determine the suitability of its business associates." SGI's regulatory scrutiny is pervasive and ongoing. Zurcaled's duty of cooperation is, correspondingly, not limited as to time, has no carve-out for allegedly "confidential" or "proprietary" information and contains no reservation to Zurcaled to determine how, whether or when information will be provided. To the contrary, it obliges Zurcaled to provide it "with any information, of whatever nature, that Company deems necessary or appropriate in assuring itself that Consultant possesses the good character, honesty, integrity, and reputation applicable to those engaged in the gaming industry." Under this provision, it is SGI that determines what information is "necessary and appropriate" and it is SGI "itself" that is to be assured. In addition, under Section 6 and 7 of the Consulting Agreement, all "Confidential Information," which includes business dealings, is SGI's "sole and exclusive property."

Paragraph 16(ii), likewise omitted by Plaintiff, provides:

> It shall be a breach of this Agreement if any gratuities shall be offered or given by the Consultant for the purposes of unlawfully influencing (a) a foreign government official or political party official or a candidate for foreign political office to assist Company in obtaining or retaining business in violation of the United States Foreign Corrupt Practices Act of 1977, or (b) any other person, under the laws of any relevant jurisdiction (collectively, "FCP Breach"). In addition to any other remedies which Company may have against the Consultant for such a breach, Company may terminate this Agreement forthwith and Consultant shall, subject to Section 16.iii, not receive any further payments.

Accordingly, if Zurcaled offered or gave gratuities or provided lavish entertainment for the purpose of unlawfully influencing any person in obtaining business, the Consulting Agreement could be terminated and any further payment obligation extinguished. (*See* Opening Brief, p. 10-12, 14-16)

4

SGI terminated the Consulting Agreement and refused to remit any payments based upon the inference it had no choice but to draw from Zurcaled's repeated refusal to provide the information it sought concerning allegations of unlawful conduct related to the award of the lottery contract.

### A. Zurcaled's Obligation Under Section 16 of the Consulting Agreement Did Not End with the Award of the Lottery Contract to SGI

Zurcaled argues that, after the award of the lottery contract, Zurcaled had no duty whatsoever to cooperate with SGI in connection with any investigation undertaken by SGI concerning alleged improprieties with respect to the award of the lottery contract to SGI. (Plaintiff's Brief, at p. 19). The Consulting Agreement, however, has no such limitation. In fact, the express language of the Consulting Agreement demonstrates that Zurcaled's Section 16 obligation to cooperate with SGI's investigation was not extinguished upon the award of the lottery contract.

Zurcaled's argument is predicated on Section 1 of the Consulting Agreement, which simply defines the *consulting services* that Zurcaled has agreed to provide, and states that *those* defined services shall end upon the award of the lottery contract. Section 1 states:

> ... consultant, as an independent contractor, shall perform, on a part-time basis, consulting services ("Services") concerning Company's public gaming network issued by the Commonwealth of Puerto Rico, Department of Treasury -- Loteria Electronica ("Puerto Rico Lottery"). Consultant shall provide Services commencing on the date hereof and terminating on award ....

However, Zurcaled's obligation to cooperate fully with SGI's investigation of Zurcaled's honesty and integrity is found in Section 16(i) of the Consulting Agreement, is not among the services defined in Section 1 and relates to regulatory, statutory and licensing issues involving SGI.

Further, Section 4(D) demonstrates that Zurcaled's duties of cooperation were not extinguished by the award of the lottery contract, stating [emphasis added]:

> All Compensation to be paid to Consultant hereunder shall be fully earned by Consultant as of the date of the award of the Puerto Rico Lottery to Company, notwithstanding that payment of such Compensation shall be payable at a later date. **No subsequent breach of the Agreement by Consultant,** expiration or termination of the Agreement **(except only as provided in Section 16)** or, death of Ernesto J. De La Cruz, shall effect Consultant's right to the payment of Compensation.

5

The "subsequent breach" relates to any breach by Zurcaled that follows the date the award of the lottery contract, indicating that Zurcaled has contractual duties that survive the award of the lottery contract. To argue, as Zurcaled does, that it had no duties under the Consulting Agreement after the award of the lottery contract, renders this provision meaningless. *See Beal Sav. Bank v. Sommer*, No. 26, 2007 Sip. Op. 2437 2007 N.Y. LEXIS 267 (Mar. 2007), * 8-10 (courts construe agreements to give meaning and effect to material provisions and should not render any portion meaningless).

Accordingly, Zurcaled's obligation to provide information to SGI in connection with its investigation of alleged wrongdoing of Zurcaled continued after the award of the lottery contract.

### B.     Zurcaled was Required to Cooperate with SGI's Section 16 Investigation of Possible Unlawful Conduct of Zurcaled

Zurcaled further argues that it had no obligation to respond to SGI's investigation because no regulatory agency notified SGI that its conduct of business with Zurcaled would jeopardize SGI's license or ability to be licensed because of Zurcaled's improper conduct. Nothing in Section 16 of the Consulting Agreement limits SGI's right to obtain information to such situations. In Section 16(i) Zurcaled expressly acknowledges SGI's ongoing duty to take reasonable efforts to determine the suitability of its business associates; and Zurcaled agreed to provide SGI with *any information* that SGI deemed necessary to assure itself of Zurcaled's good character, honesty, integrity and reputation. Zurcaled's contention that it was contractually free to disregard SGI's investigation of Zurcaled's alleged misconduct cannot be sustained.

### C.     Zurcaled's Refusal to Provide SGI With the Requested Information Required SGI to Infer Unlawful Conduct by Zurcaled

The Consulting Agreement provided no grounds on which Zurcaled could refuse to provide the requested information. Based upon the correspondence between counsel, there can be no dispute between the parties as to what information SGI requested and Zurcaled refused to provide.

####     1.     Zurcaled Refused to Provide SGI with Requested Information

On March 3, 2005, SGI's General Counsel made the following written request:

6

> It is of the highest importance to SciGames that, if at all possible, it put to rest the allegations of questionable or illegal conduct. It is also necessarily the case that you have personal knowledge of all of Zurcaled's activities in connection with the consulting agreement and the procurement process. To the end of obtaining your cooperation and assistance with respect to these allegations of prior misconduct, we request that you make yourself available to be interviewed by Mr. Potts and our counsel, under oath and with a stenographic record. *** It is our expectation that you would answer all questions truthfully and fully to the best of your ability.

In response to that request, on March 10, 2005, Alan Katz, Zurcaled's counsel, wrote:

> ... under the slim chance that Scientific Games is operating in good faith, we encourage Scientific Games to set forth in writing any information they seek from Zurcaled. At that time, Zurcaled will consider the questions and, where appropriate, respond accordingly. If a follow up meeting is required, it will then be considered.

Zurcaled's counsel then implicitly concedes the contractual obligation to cooperate, stating:

> ... Zurcaled's compensation is fully earned as of the date of the award of the Puerto Rico lottery ... and a subsequent breach of the Agreement does not affect its right to the payment of compensation. Accordingly, should Zurcaled choose not to cooperate, payments under the Consulting Agreement are still due and owing.

Zurcaled's counsel also advised SGI that should it fail to remit payments to Zurcaled after the lottery went online on March 15, 2005, "Zurcaled will embark upon the defense of its reputation" and threatened to "take the deposition of all those involved with Loteria Electronica and the legislature for the purpose of unequivocally determining that Zurcaled did not engage in improper conduct".[3] It is difficult to find a plausible, non-extortionate explanation for Zurcaled's threat to depose public officials to "defend" Zurcaled's reputation if SGI pressed for Zurcaled's private cooperation in an investigation.

By letter dated March 21, Zurcaled's counsel modified its position:

> In response to Scientific Games's request, I have advised you that Zurcaled believes that its duty to cooperate, if any, does not extend to the parameters requested by Scientific Games. Nevertheless, I have also advised that Zurcaled will cooperate in providing certain information to further Scientific Games's investigation of the "allegations." Zurcaled has offered to respond to Scientific Games's questions as follows:

---

[3] Certainly, if there were no unlawful conduct, and Zurcaled had nothing to hide, it would have had no reason not to provide the identities of the individuals it had contacted or to disclose the content of its discussions and scope of its activities to put to rest the allegations of misconduct in the Puerto Rican legislature.

7

        i.    Zurcaled will respond to only particular allegations regarding its conduct in Puerto Rico and will state whether or not the allegations are true or false.

        ii.    Zurcaled will provide Scientific Games, if questioned, with the details of the Services it performed for Scientific Games regarding the lottery in Puerto Rico.

...Because of Zurcaled's desire to protect its confidential and proprietary business/trade secrets, Zurcaled will not identify those people it contacted in Puerto Rico.

On April 6, 2005, SGI's counsel advised Zurcaled's counsel that the conditions Zurcaled imposed, including Zurcaled's refusal to attend a meeting with SGI if information concerning Zurcaled's contacts and intermediaries was sought, were unacceptable. Counsel stated that, Zurcaled's refusal to identify the contacts it made and actions taken in connection with SGI's business was unreasonable. SGI's counsel concluded:

> We have specific information suggesting that your clients entertained decision-makers and other officials in a manner that may or may not be linked to the award of the contract in question here. *** There is no way that our client can pay your clients any monies that might be used to reimburse expenses of this sort or to satisfy promises of any sort to any such official under prevailing corporate governance and Justice Department Pronouncements. Your clients' refusal to have an open dialogue on these topics only contributes to the problem.

On this basis, SGI declared Zurcaled in breach of the Consulting Agreement. Zurcaled deemed the April 6, 2006 letter an improper termination under Section 16(i). Zurcaled provided none of the requested information, and disregarded a subsequent written request for information.

    **2.    Zurcaled's Failure to Provide the Information Requested By SGI Required its Termination Under Section 16**

Section 16 provides for the termination of the Consulting Agreement contract without further remuneration in the event that Zurcaled unlawfully sought to influence the award of the lottery contract or if SGI was notified by a regulatory agency that Zurcaled's activities threatened its license. These termination provisions provide indisputable evidence of the materiality of SGI's ongoing obligation to assure itself of Zurcaled's honesty and integrity.

Zurcaled argues that, even if it refused to cooperate with SGI's Section 16 investigation, SGI did not have the right to terminate the Consulting Agreement. This argument has no merit. The express terms of the Section 16 permit Zurcaled's termination after it completed its Section 1 services; and Zurcaled's duty to cooperate with SGI's investigation is embedded in Section 16.

Zurcaled argues, without analysis, that its Section 16 duty to cooperate is distinguishable from both an insured's failure to cooperate with the carrier's investigation (which it concedes to be material). However, these cooperation provisions protect the same core contractual expectation – that the party with knowledge of the claims and allegations will be required to provide the other party with the information it deems necessary to protect its interests and/or comply with its statutory, regulatory or contractual duties.

Moreover, Zurcaled, in its brief, fails to address that Zurcaled's refusal to cooperate, supports, indeed compels, SGI's obligation to draw an adverse inference that, had Zurcaled provided the information sought, it would have revealed that Zurcaled was involved in possibly corrupt practices barred by applicable law and the Consulting Agreement. *E.g. Dunkin' Donuts Inc. v. Barr Donut, LLC*, 242 F. Supp. 2d 296 (S.D.N.Y. 2003); see Opening Brief, pp. 13-16. Had SGI paid Zurcaled, it would have exposed itself to the significant risk of becoming derivatively liable because of Zurcaled's refusal to cooperate with SGI's investigation of the reports of unlawful conduct. (*See* Opening Brief, pp. 11-13, 16)

### III. Public Policy Bars Zurcaled's Recovery under the Consulting Agreement

Zurcaled does not contest that SGI, given its statutory obligations to rigorously monitor the conduct of its agents, could not provide further payment to Zurcaled under the Consulting Agreement without placing it in potential jeopardy of civil and criminal sanctions. (*See* Opening Brief,

9

pp. 1 – 2, 9 - 12) Nor does Zurcaled challenge that under New York law, a party engaging in corruption in connection with the performance of a contract, will be precluded from profiting from their wrongdoing. (*See* Opening Brief, pp. 8 – 9.)

Accordingly, even if it could be found that the Consulting Agreement did not afford an express termination remedy for Zurcaled's breach under the Consulting Agreement (which it did); Zurcaled's refusal to cooperate with SGI's efforts to comply with its statutory and regulatory obligations bars its recovery as a matter of independent federal and state public policy. In addition, the Consulting Agreement expressly incorporates limitations imposed by operation of law as a matter of public policy. *See* Section 15 of Consulting Agreement.

## Conclusion

By reason of the foregoing, defendants respectfully request that the Court dismiss the complaint, with prejudice.

Dated: New York, New York
       August 31, 2007

Respectfully submitted,

**THELEN REID BROWN RAYSMAN & STEINER LLP**

By: _____
    David M. Olasov
    Scott Wyner
875 Third Avenue
New York, New York 10022
(212) 603-2000
Attorneys for Defendants
Scientific Games International, Inc., and
Scientific Games Corporation

NY #1183013 v3