Thelen Reid Brown Raysman & Steiner LLP
David M. Olasov
Scott H. Wyner
875 Third Avenue
New York, New York 10022
(212) 895-2000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                    :

ZURCALED INTERNATIONAL, INC.,        :     Case No. 07 Civ. 4066 (LBS)

             Plaintiff,        :

           -against-        :

SCIENTIFIC GAMES CORPORATION,    :    **DEFENDANTS' RULE 56.1**
SCIENTIFIC GAMES INTERNATIONAL, INC., :    **STATEMENT AND RESPONSE**
and SCIENTIFIC GAMES CORPORATION    :    **TO PLAINTIFF'S RULE 56.1**
INTERNATIONAL, INC.,                 **STATEMENT**

             Defendants.     :

------------------------------------------------------------X

Defendants Scientific Games Corporation ("Scientific Games") and Scientific Games International, Inc. ("SGI"), in the event their motion to dismiss is converted to one for summary judgment, pursuant to Local Rule 56.1, submit the following statement of the material facts as to which defendants contend there is no genuine issue to be tried.

**The Parties**

    1.     Defendant Scientific Games Corporation is a publicly owned Delaware corporation, whose shares of common stock are registered and traded on the NASDAQ National Market. (Affidavit of Larry A. Potts, sworn to June 25, 2007 [the "Potts Aff."]), ¶¶ 2, 5)

    2.     Scientific Games International, Inc. ("SGI") is a Delaware corporation and a wholly owned subsidiary of Scientific Games. (Potts Aff., ¶ 2)

3.      Scientific Games Corporation International, Inc. is not, and never was, an entity of any kind. (Potts Aff., ¶ 2)

4.      Zurcaled International, Inc. ("Zurcaled") is a New Jersey corporation. (Complaint, Paragraph 1 [admission])

**The Business of Scientific Games Corporation**

5.      Scientific Games, directly and through its subsidiaries and affiliates, including SGI, is a leading worldwide provider of services, systems, and products to the lottery and pari-mutuel wagering industries. (Potts Aff., ¶ 5)

6.      Scientific Games has an extensive compliance program governing the consultants with which it and its subsidiaries, including SGI, work in an effort to ensure compliance with legal requirements imposed in connection with its wagering businesses, with laws and rules generally applicable to publicly traded corporations and anti-corruption statutes, including the Foreign Corrupt Practices Act, 15 U. S. C. §78dd-1, *et seq.* (Potts Aff., ¶ 5)

**The Contract**

7.      In December 2003, SGI entered into the Consulting Agreement with Zurcaled in connection with SGI's response to the Treasury Department of the Commonwealth of Puerto Rico's request for a proposal with respect to providing services for the Puerto Rican electronic lottery.  Complaint, ¶ 10 [admission]; Potts Aff., ¶ 9 and Ex. A [Consulting Agreement], ¶ 1)

8.      Paragraph 16(i) of the Consulting Agreement provides:

> Consultant [Zurcaled] specifically acknowledges that Company [SGI] is subject to the gaming and licensing requirements of various jurisdictions and is obliged to take reasonable efforts to determine the suitability of its busi-

NY #1183291 v2

ness associates. Consultant agrees to cooperate fully with Company in providing it with any information, of whatever nature, that Company deems necessary or appropriate in assuring itself that Consultant possesses the good character, honesty, integrity, and reputation applicable to those engaged in the gaming industry ("Consultant Conduct") and specifically represents that there is nothing in Consultant's background, history, or reputation that would be deemed unsuitable under the standards applicable to the gaming industry. If, during the term of the contract, Company is notified by any regulatory agency that the conduct of business with Consultant will jeopardize Company's license or ability to be licensed because of improper Consultant Conduct, this contract to provide Services shall terminate upon written notice by Company if a cure is not effected within sixty days of notice. Upon such termination and subject to Section 16.iii, Consultant shall not receive any further payments.

(Potts Aff., Ex. A, ¶ 16)

9.     On April 5, 2004, the Puerto Rican newspaper *El Nuevo Dia* published an article in which the Secretary of the Treasury confirmed that SGI and two other bidders were objects of a Treasury Department investigation concerning allegations of technical irregularities, sale of influence and the payment of improper political contributions to affect the selection process. (Potts Aff., ¶ 10 and Exhibit E)

10.     The Puerto Rican lottery and SGI signed a contract in September 2004 calling for service to commence on March 16, 2005. (Potts Aff., ¶ 11)

11.     The House of Representatives and Senate of the Commonwealth of Puerto Rico adopted resolutions to compel an official investigation with respect to the process and award of the new lottery contract. (Potts Aff., ¶ 12, Exs. F, G and H)

12.     In response to these allegations, and to satisfy its duty of oversight of its employees and agents to determine whether the lottery contract was procured in a manner that complied with the requirements of applicable statutory, regulatory and licensing

NY #1183291 v2

requirements, Scientific Games, on behalf of SGI, initiated a review. (Potts Aff., ¶¶ 13, 14)

13.    SGI's review included an investigation of the contract award and the role, if any, of Zurcaled and Ernesto de la Cruz ("de la Cruz"), Zurcaled's principal, in that award. (Potts Aff., ¶ 13)

14.    In the course of its review, SGI requested that de la Cruz make himself available for an interview under oath and on a transcribed record. (Potts Aff., ¶ 14 and Ex. I)

15.    On or about March 3, 2005 SGI's General Counsel made the following written request:

> Although SciGames' performance of the Puerto Rican lottery contract is about to begin, there have been recurring allegations in the press and from various legislative sources that the contract was procured on the basis of questionable or illegal conduct of Sci-Games' representative or its agents. These allegations continue to place SciGames' contract in jeopardy. Larry Potts, the vice president for security and compliance of Scientific Games Corporation, has been unable, despite diligent efforts, either to corroborate or to refute these allegations. Mr. Potts has found nothing to support any inference of any misconduct by any SciGames employee. He has advised me of this fact, and has reported the further curious result that he has not been able to uncover any evidence that Zurcaled or you on its behalf actually did anything, or were identified as having done anything, in connection with this procurement, there is understandable concern about the absence of any 'footprints' involving Zurcaled International, Inc. and you.

> It is of the highest importance to SciGames that, if at all possible, it put to rest the allegations of questionable or illegal conduct. It is also necessarily the case that you have personal knowledge of all of Zurcaled's activities in connection with the consulting agreement and the procurement process.

> To the end of obtaining your cooperation and assistance with respect to these allegations of prior misconduct, we request that you make yourself available to be interviewed by Mr. Potts and our

NY #1183291 v2

Sy9KzyzRdS5KTS1JLElNLyqNT0pNzsvMTszXUQ8vsrFzAGGjBEeRnhYoQw==

Sy9KzyzRdS5KTS1JLElNLyqNT0pNzsvMTszXUQ8vsrFzAGGjBEeRnhYoQw==

Sy9KzyzRdS5KTS1JLElNLyqNT0pNzsvMTszXUQ8vsrFzAGGjBEeRnhYoQw==

Sy9KzyzRdS5KTS1JLElNLyqNT0pNzsvMTszXUQ8vsrFzAGGjBEeRnhYoQw==

Sy9KzyzRdS5KTS1JLElNLyqNT0pNzsvMTszXUQ8vsrFzAGGjBEeRnhYoQw==

counsel, under oath and with a stenographic record. Your counsel would be invited to attend and would have the right, upon the conclusion of SciGames' questioning, to ask questions of his own, to clarify, amplify or explain anything he or you consider should be clarified or explained. It is our expectation that you would answer all questions truthfully and to the best of your ability. For the sake of clarity, let me add that, as a matter of contract construction, we are of the opinion that Sections 6 and 16 of the Consulting Agreement contractually mandate the requested cooperation of Zurcaled and you on its behalf.

(Potts Aff., Ex. I)

16. In response to that request, on March 10, 2005, Zurcaled's counsel, Alan Katz, wrote:

... under the slim chance that Scientific Games is operating in good faith, we encourage Scientific Games to set forth in writing any information they seek from Zurcaled. At that time, Zurcaled will consider the questions and, where appropriate, respond accordingly. If a follow up meeting is required, it will then be considered.

(Potts Aff., Ex. B)

17. After further discussions between counsels, Zurcaled's counsel, by letter dated March 21, 2005, modified Zurcaled's position:

Scientific Games has requested that Zurcaled answer questions posed by Mr. Potts pertaining to Zurcaled's conduct in Puerto Rico. Scientific Games has requested that such questioning be in person, that Zurcaled answer the questions under oath and that there be no parameters as to the limitations of such questions. Specifically, and without limitation, Scientific Games has requested that Zurcaled answer questions pertaining to the Services performed by it in Puerto Rico and with regard to same, Scientific Games has demanded that Zurcaled reveal its contacts utilized in this process. Scientific Games has explained that it requires the questioning of Zurcaled in this manner, to respond to, and investigate certain allegations made in Puerto Rico. At this time, the allegations appear to be surmise and conjecture and do not constitute any formal grievance or investigation by Lotteria Electronica, or any branch of the government in Puerto Rico.

5

NY #1183291 v2

In response to Scientific Games's request, I have advised you that Zurcaled believes that its duty to cooperate, if any, does not extend to the parameters requested by Scientific Games. Nevertheless, I have also advised that Zurcaled will cooperate in providing certain information to further Scientific Games' investigation of the "allegations".

Zurcaled has offered to respond to Scientific Games's questions as follows:

> i.  Zurcaled will respond to only particular allegations regarding its conduct in Puerto Rico and will state whether or not the allegations are true or false.

> ii.  Zurcaled will provide Scientific Games, if questioned, with the details of the Services it performed for Scientific Games regarding the lottery in Puerto Rico.

> .... Because of Zurcaled's desire to protect its confidential and proprietary business/trade secrets, Zurcaled will not identify those people it contacted in Puerto Rico.

(Potts Aff., Ex. C)

18.    On April 6, 2005 SGI's counsel advised Zurcaled's counsel that the conditions Zurcaled imposed, including Zurcaled's refusal to attend a meeting with SGI if information concerning Zurcaled's contacts and intermediaries was sought, was unacceptable. SGI's counsel explained that the Justice Department, as demonstrated in various enforcement proceedings, "requires that companies exercise appropriate diligence in monitoring the activities of consultants such as your clients." Counsel stated that, while SGI might consider entering into a confidentiality agreement, Zurcaled's refusal to identify the contacts it made and actions taken in connection with SGI's business was unreasonable. SGI's counsel concluded:

> We have specific information suggesting that your clients entertained decision-makers and other officials in a manner that may or may not be linked to the award of the contract in question here. *** There is no way that our client can pay your clients any mon-

NY #1183291 v2

ies that might be used to reimburse expenses of this sort or to sat-
isfy promises of any sort to any such official under prevailing cor-
porate governance and Justice Department Pronouncements. Your
clients' refusal to have an open dialogue on these topics only con-
tributes to the problem.

SGI declared Zurcaled in breach of the Consulting Agreement. (Potts Aff., Ex. J)

19.    By letter dated April 12, 2005, Zurcaled accepted the April 6 letter as a

"notice of termination" rather than cure the breach by providing the requested informa-

tion. Zurcaled deemed the April 6, 2006 letter an improper termination under Section

16(i). (Potts Aff., ¶ 16 and Ex. D)

* * *

Defendants further submit the following statement, in response to Zurcaled's Rule

56.1 statement:

Objections to Zurcaled's Proffered Statement

Zurcaled requests that defendants' Rule 11 motion be converted to a Rule 56

motion. To the extent Zurcaled contends that there are material facts relating to defen-

dants' defenses that require a trial, its Rule 56.1 statement does not provide a short and

concise statement of such material facts. See Local Rule 56.1(b)

Moreover, Zurcaled, without submitting proofs to establish its prima facie claims,

contends that it is entitled to summary judgment. Although Zurcaled submits a Rule 56.1

statement as if it had made a cross-motion for summary judgment, it ignores the Rule

56.1(d) requirement that each statement of material fact must be followed by citation of

evidence which would be admissible, as required by F.R.Civ. P. 56(e) and submits no

proofs with respect to its claims.

Without waiving its objections, defendants respond as follows:

NY #1183291 v2

1.      Admitted.

2.      Controverted. Zurcaled ignores the Rule 56.1(d) requirement that each statement of material fact must be followed by citation of evidence which would be admissible, as required by F.R.Civ. P. 56(e) and, in fact, has proffered no such evidence. Furthermore, this paragraph seeks admissions with respect to legal contentions, which is an improper use of a Rule 56.1 statement. Defendants further state that, based upon the facts set forth in its Rule 56.1 statement, Zurcaled is not entitled to recovery under the Consulting Agreement.

3.      Admitted, but only to the extent that the Consulting Agreement, in Paragraph 1, addresses certain consulting services to be provided by Zurcaled, and refers to the entire Consulting Agreement for an accurate statement of its content.

4.      Admitted that the Consulting Agreement contains the quoted language in Paragraph 4B, refer to the Consulting Agreement for an accurate statement of its content, and controvert all other legal and any other factual allegations set forth in this paragraph.

5.      Admitted that the Consulting Agreement contains the quoted language in Paragraph 4D, refer to the Consulting Agreement for an accurate statement of its content, and controvert all other legal and any other factual allegations set forth in this paragraph.

6.      Admitted that the Consulting Agreement contains the quoted language in Paragraph 4C, refer to the Consulting Agreement for an accurate statement of its content, and controvert all other legal and any other factual allegations set forth in this paragraph.

7.      Admitted that the Consulting Agreement contains the quoted language in Paragraph 4D, refer to the Consulting Agreement for an accurate statement of its content, and controvert all other legal and any other factual allegations set forth in this paragraph.

NY #1183291 v2

8.      Admitted that the Consulting Agreement contains the quoted language in Paragraph 1, refer to the Consulting Agreement for an accurate statement of its content, and controvert all other legal and any other factual allegations set forth in this paragraph.

9.      Admitted.

10.     Admitted.

11.     Controverted.  Zurcaled ignores the Rule 56.1(d) requirement that each statement of material fact must be followed by citation of evidence which would be admissible, as required by F.R.Civ. P. 56(e) and, in fact, has proffered no such evidence. Defendants further state that, based upon the facts set forth in their Rule 56.1 statement, Zurcaled is not entitled to any recovery under the Consulting Agreement.  (Potts Aff., ¶¶ 13 - 18,  and Exs. B, C, D, J and I)

12.     Controverted.  This paragraph seeks admissions with respect to legal contentions, which is an improper use of a Rule 56.1 statement.  Defendants further state that the legal proposition is not supported by the express terms of the Consulting Agreement. (*E.g.,* Potts Aff., Ex. A., ¶¶ 4, 16)

13.     Controverted.  Zurcaled seeks an admission of fact for which its proffers no evidentiary citation.

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.     Admitted.

18.     Controverted. This paragraph seeks admissions with respect to legal contentions, which is an improper use of a Rule 56.1 statement. Defendants further state

NY #1183291 v2

that the legal proposition is not supported by the express terms of the Consulting Agreement. (*E.g.,* Potts Aff., Ex. A., ¶¶ 4, 16)

19.    Controverted.    This paragraph seeks admissions with respect to legal contentions, which is an improper use of a Rule 56.1 statement.  Defendants further state that Zurcaled's legal contention is not supported by the express terms of the Consulting Agreement. (*E.g.,* Potts Aff., Ex. A., ¶¶ 4, 16)

20.    Controverted, except admit that SGI sought information from Zurcaled in or about March 2005 (which was five months after the award of the lottery contract). Zurcaled ignores the Rule 56.1(d) requirement that each statement of material fact must be followed by citation of evidence which would be admissible, as required by F.R.Civ. P. 56(e) and proffer evidence as to what, if any, services it performed under the Consulting Agreement.  This paragraph also improperly seeks admissions with respect to legal contentions, which is an improper use of a Rule 56.1 statement.  In this regard, defendants state that Zurcaled had continuing contractual obligations to SGI following the award of the lottery contract, those obligations were breached, and that SGI has no payment obligation to Zurcaled.

21.    Controverted. Zurcaled seeks an admission of fact for which it proffers no evidentiary citation.  Moreover, defendants state that SGI notified Zurcaled that the allegations that the lottery contract was procured on the basis of questionable or illegal conduct of SGI's agents or representatives put SGI's contract in jeopardy. (Potts Aff., Ex. I)

22.    Controverted. Zurcaled seeks an admission of fact for which its proffers no evidentiary citation and seeks admissions with respect to legal contentions, which is

NY #1183291 v2

an improper use of a Rule 56.1 statement. SGI further states that it has no payment obligation to Zurcaled.

Dated: New York, New York
       August 31, 2007

                           Respectfully submitted,

                           **THELEN REID BROWN RAYSMAN & STEINER LLP**

                           By: _____
                               David M. Olasov

                           875 Third Avenue
                           New York, New York 10022
                           (212) 603-2000

                           Attorneys for Defendants Scientific
                            Games Corporation and Scientific
                            Games International, Inc.

NY #1183291 v2